UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEMETRIUS WRIGHT,
LUIS VELEZ,

                Plaintiffs, on behalf of
                themselves and all others
                similarly situated,

                - against -

BRAE BURN COUNTRY CLUB, INC.,
STEVEN VANDO, individually and as General
Manager of Brae Burn Country Club,
MARIA CONTE, individually and as Controller of Brae
Burn Country Club,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:  08-CV-3172 (DC)

:

:  **DECLARATION OF**
:  **PETER M. PANKEN**
:  **IN SUPPORT OF**
:  **DEFENDANTS' MOTION**
:  **FOR SANCTIONS**
:  **PURSUANT TO**
:  **FED. R. CIV. P. 11**
:  **AND 28 U.S.C. § 1927**

:  **FILED UNDER SEAL**

:

:

:

:

:

PETER M. PANKEN declares, under penalty of perjury, as follows:

1.    I am a partner with Epstein Becker & Green, P.C., counsel for Defendants Brae Burn Country Club, Inc., Steven Vando, and Maria Conte (collectively, "Defendants") and am duly admitted to practice in New York and this Court. I am fully familiar with the facts of this case and submit this affidavit in support of Defendants' motion for sanctions pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927, and to place before the Court certain relevant documents.

**REDACTED AND
FILED UNDER SEAL**

3.    Attached as Exhibit 2 is a true copy of the Complaint filed in this action on or about March 31, 2008.

4.    Attached as Exhibit 3 is a true copy of Defendant Brae Burn Country Club's Offer of Judgment served on counsel for Plaintiff on May 5, 2008.

5.    Attached as Exhibit 4 is a true copy of the May 5, 2008 Affidavit of Maria Conte, and exhibits thereto.

6.    The parties appeared for a court conference on May 23, 2008. At that time, I advised Mr. Wims that Mr. Wright, and all other "similarly situated" putative plaintiffs, were employed pursuant to a collective bargaining agreement, and the judicial forum was inappropriate, as all allegations were subject to arbitration.

7.    At this same conference, Judge Chin expressed skepticism as to whether Mr. Wims had complied with the Fair Labor Standards Act's opt-in requirement with regard to Mr. Velez.

8.    Attached as Exhibit 5 is a true copy of a May 27, 2008 email from David Wims to Peter M. Panken and Tracey A. Cullen.

9.    Attached as Exhibit 6 is a true copy of the First Amended Complaint filed in this action on or about May 27, 2008.

10.    Attached as Exhibit 7 is a true copy of a June 3, 2008 email from David Wims to Peter M. Panken.

11.    Attached as Exhibit 8 is a true copy of the Second Amended Complaint filed in this action or about July 15, 2008.

12.    Attached as Exhibit 9 is a true copy of a June 18, 2008 letter from Peter M. Panken to David Wims.

13. Attached as Exhibit 10 is a copy of the Collective Bargaining Agreement between the Local 32BJ, SEIU and the FEDERATION OF COUNTRY CLUBS, For and on Behalf of its Member Clubs, Effective February 1, 2005.

14. Attached as Exhibit 11 is a true copy of a June 5, 2008 email from Peter M. Panken to David Wims.

Peter M. Panken

Sworn to before me this
4ᵗʰ day of August            , 2008

Notary Public

TRACEY A CULLEN
Notary Public, State of New York
No. 02CU6146277
Qualified in New York County
Commission Expires May 1, 2010

**EXHIBIT 1**

**EXHIBIT 1 FILED UNDER SEAL**

xxx

EXHIBIT 2

Apr 02 08 01:30p    LAW OFFICE OF DAVID WIMS    6463939552    p.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



-------------------------------------------X

DEMETRIUS WRIGHT,

Plaintiff, on
on behalf of himself and all others similarly situated,

-against-

Jury Trial Demanded

BRAE BURN COUNTRY CLUB, INC.,

Defendant.

-------------------------------------------X

Plaintiff Demetrius Wright, by his attorney, David C. Wims, alleges, on behalf of himself
and all others similarly situated who opt into this action, as follows:

## NATURE OF ACTION

1. This is a challenge to Defendant's unlawful practice of paying its non-exempt

employees for overtime at one and one-half (1.5) times their 'hourly rate', as opposed to

their 'regular rate', as required by law. For years, Defendant undervalued Plaintiff's

overtime pay by failing to include all remuneration for employment, such as the value of

lodging and meals, in its calculations. In sum, Defendant - for years - simply has grossly

underpaid Plaintiff and other similarly situated employees for overtime.

2. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), Plaintiff

alleges that he is: (i) entitled to unpaid overtime wages from Defendant for his work

beyond forty hours per week; and (ii) entitled to liquidated damages equal to his unpaid

overtime wages under the FLSA.

3. Pursuant to the New York Labor Law, Article 19 (unpaid overtime wages), and

implementing regulations, Plaintiff alleges that he is: (i) entitled to unpaid overtime

wages from Defendant for his work beyond forty hours per week; and (ii) entitled to

liquidated damages equal to twenty-five percent of his unpaid overtime wages under the

New York Labor Law.

4. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings his FLSA claim as a collective action

on behalf of himself and all other similarly situated employees of Defendant who elect to

opt into this action.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28

U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's Labor Law and

contract claims pursuant to 28 U.S.C. 1367. In addition, this Court has jurisdiction over

Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216 (b).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a),

as the events giving rise to the claim occurred therein.

**FACTUAL ALLEGATIONS**

*The Parties*

7. Plaintiff Demetrius Wright is an adult male residing in the State of New York, County

of Westchester.

8. Defendant Brae Burn Country Club, Inc. is a domestic not-for-profit corporation doing

business within the State of New York, County of Westchester.

9. Defendant owns and/or operates the real property located at Brae Burn Drive,

Purchase, NY 10577.

*Statutory Coverage*

10. From approximately April 2006 to April 2007, Plaintiff was employed by Defendant

2

within the meaning of §§ 2, 190, and 651 of the New York Labor Law.

11. From approximately April 2006 to present, Plaintiff was employed by Defendant within the meaning of 29 U.S.C. § 203 of the FLSA.

12. In performing his duties for Defendant, Plaintiff was engaged in commerce within the meaning of the FLSA.

13. In performing his duties for Defendant, Plaintiff used goods and products that had been moved or produced in interstate commerce.

14. From the commencement of Plaintiff's employment and before, to the filing of this Complaint, Defendant has been an enterprise engaged in commerce within the meaning of the FLSA.

15. From the commencement of Plaintiff's employment and before, to the filing of this Complaint, Defendant has used goods and products that have been moved or produced in interstate commerce.

*The Parties' Employment Relationship*

16. Plaintiff worked for Defendant from April 2006 to April 2007 (hereinafter, the "Covered Period").

17. Throughout the Covered Period, Plaintiff worked for Defendant as a laundry room attendant.

*Plaintiff's Work Hours and Schedules*

18. Throughout the Covered Period, Plaintiff was a full-time employee of Defendant subject to a collective bargaining agreement ("CBA"). (Attached as Exhibit "A").

19. The CBA guaranteed Defendant's employees greater labor protections than statutory law, including overtime at one and one-half (1.5) times the 'regular rate' for hours

3

worked over eight in a day and forty in a week, *inter alia.*

20. Throughout the Covered Period, Defendant scheduled Plaintiff to work (barring vacation days, sick days, or other days off from his schedule) five, eight-hour shifts per week, with additional days as needed by Defendant.

21. Plaintiff's work hours for Defendant frequently totaled more than forty hours per week.

*Plaintiff's Remuneration*

22. Throughout the Covered Period, as consideration for employment, Defendant paid Plaintiff: a) wages, b) lodging with utility services, c) health insurance, d) meals and other forms of remuneration.

23. Throughout the Covered Period, Plaintiff's weekly wages from Defendant varied depending on the number of hours Defendant assigned him to work.

24. Throughout the Covered Period, Defendant paid Plaintiff overtime premium compensation of one and one-half (1.5) times his 'hourly rate' of pay for hours he worked beyond forty per week.

25. Throughout the Covered Period, however, Defendant did not include the value of the lodging and appurtenant services; and meals, into it calculation of plaintiff's 'regular rate'.

26. Throughout the Covered Period, Plaintiff's 'hourly rate' of pay from Defendant varied from approximately $9.00 per hour to $9.40 per hour.

27. Attached to this Complaint as Exhibit "B" are accurate copies of pay stubs Defendant issued to Plaintiff during the Covered Period.

4

*Collective Action Allegations*

28. During the Covered Period, Defendant employed other employees in the same and other job title(s) as Plaintiff.

29. During the Covered Period, Defendant subjected other employees than Plaintiff to the same overtime pay policies outlined above.

30. Defendant subjected other employees than Plaintiff to the same overtime pay policies outlined above even where those employees had different titles, responsibilities, shifts and work schedules than Plaintiff.

31. Upon information and belief, Defendant continues to subject its employees to the same overtime pay policies it has applied to Plaintiff, as outlined above.

**FIRST CLAIM FOR RELIEF**

**FAIR LABOR STANDARDS ACT**

32. Plaintiff alleges and incorporates by reference all of the above allegations.

33. Under the FLSA, Plaintiff was entitled to overtime premium compensation from Defendant of one and one-half (1.5) times his 'regular rate' of pay for hours he worked beyond forty per week for Defendant.

34. Under the FLSA, Plaintiff's 'regular rate' of pay includes all remuneration for employment, whether in the form of wages, facilities or some other form, and whether paid directly to Plaintiff or to a third party.

35. By the above course of conduct, Defendant has violated the FLSA.

36. Defendant has violated the FLSA willfully.

37. Upon information and belief, Defendant's practice of not compensating Plaintiff at one and one-half (1.5) times his 'regular rate' of pay for hours he worked beyond forty

5

per week was not approved in writing by the United States Department of Labor

("USDOL") or the New York Department of Labor ("NYDOL").

38. Upon information and belief, Defendant's practice of not compensating Plaintiff at

one and one-half (1.5) times his 'regular rate' of pay for hours he worked beyond forty

per week was not based on Defendant's (or any of its agents') review of any policy or

publication of the USDOL or the NYDOL.

39. Upon information and belief, Defendant's practice of not compensating Plaintiff at

one and one-half (1.5) times his 'regular rate' of pay for hours he worked beyond forty

per week was not based upon any advice of counsel received by Defendant.

40. Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant

his unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and

the costs of this action, pursuant to 29 U.S.C. § 216 (b).

41. Other employees similarly situated to Plaintiff are entitled to the same relief that

Plaintiff seeks under the FLSA.

## SECOND CLAIM FOR RELIEF

## NEW YORK LABOR LAW

42. Plaintiff alleges and incorporates by reference all of the above allegations.

43. Under the New York Labor Law, Plaintiff was entitled to overtime premium

compensation from Defendant of one and one-half (1.5) times his 'regular rate' of pay for

hours he worked beyond forty per week for Defendant.

44. Under the New York Labor Law, Plaintiff's 'regular rate' of pay includes all remuneration for employment, whether in the form of wages, facilities or some other form, and whether paid directly to Plaintiff or to a third party.

45. By the above course of conduct, Defendant has violated the New York Labor Law.

46. Defendant has violated the New York Labor Law willfully.

47. Due to Defendant's New York Labor Law violations, Plaintiff is entitled to recover from Defendant his unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, and the costs of this action, pursuant to New York Labor Law §§ 198, 663(1).

## THIRD CLAIM FOR RELIEF

## BREACH OF CONTRACT

48. At all times herein relevant, Defendant's employment of Plaintiff was covered by the CBA that required overtime at one and one-half (1.5) times the 'regular rate' for hours worked: a) over eight in a day or forty in a week, and, b) on the sixth day of any week.

49. Plaintiff was also entitled to two times the 'regular rate' on the seventh day in a week.

50. Throughout Plaintiff's employment, Defendant failed to pay overtime compensation as required by the CBA, as indicated above, and when Plaintiff notified Defendant's agent of the same, no adjustment was had.

51. Defendant has breached the CBA, causing Plaintiff damages.

52. Due to Defendant's CBA breach, Plaintiff is entitled to recover from Defendant his unpaid overtime compensation.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

53. Award Plaintiff the following unpaid wages:

a. his unpaid overtime compensation due under the FLSA;

b. his unpaid overtime compensation due under the New York Labor Law; and

c. his unpaid regular and overtime compensation due under the CBA; and

54. Award Plaintiff the following liquidated damages:

a. liquidated damages equal to his unpaid overtime compensation under the FLSA; and

b. liquidated damages equal to an additional twenty-five percent of his unpaid overtime

compensation under the New York Labor Law; and

55. Award Plaintiff pre-judgment interest; and

56. Award Plaintiff reasonable attorney's fees as well as the costs of this action; and

57. Award all similarly situated employees who opt into this action the same relief that

Plaintiff is awarded under the FLSA; and

58. Award such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

59. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a

trial by jury on all questions of fact raised by the Complaint.

Dated: 03/28/08

Brooklyn, NY

LAW OFFICE OF DAVID WIMS
David C. Wims, Esq. (DW-6964)
*Attorney for Plaintiff*
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550

9

## EXHIBIT A

## EXHIBIT A

## ARTICLE 5 - WORKWEEK AND OVERTIME

**Section 5.1**     The normal workweek for all full-time employees shall be scheduled over five (5) consecutive days of eight (8) consecutive hours each day plus one (1) additional nonpaid hour for an eating period, as close to the middle of the working day as shall be practicable. Without limiting the Club's authority and rights under Article 31 hereof, the Club may alter the schedule when work is not available because of weather, Act of God or other cause beyond the control of the Club.

**Section 5.2**     For outside employees who had at least three (3) years seniority as of February 1, 1984, the workweek shall be forty (40) hours, to begin on Monday and end on Friday.

1.     All work performed by such employees on Saturday shall be paid at the rate of time-and-one-half (1-1/2) times the regular rate of pay, with a guaranty that any Grounds Foreperson, Groundskeeper or Mechanic called to work on Saturday shall be guaranteed at least three (3) hours of work.

2.     All work performed by such employees on Sunday shall be at two (2) times the regular hourly rate of pay, with a guaranty that any Grounds Foreperson, Groundskeeper or Mechanic called to work on Sunday shall be guaranteed at least three (3) hours of work.

**Section 5.3**     For all employees not covered by Section 5.2, all hours worked on the sixth (6th) day in a regular workweek shall be paid at the rate of one-and-one-half (1-1/2) times the regular rate of pay. All hours worked on the seventh (7th) day in a regular workweek shall be paid at two (2) times the regular rate of pay.

**Section 5.4**     Hours worked in excess of eight (8) hours in any one day or hours worked in excess of forty (40) hours in a regular workweek shall be paid for at the rate of time-and-one-half the regular rate of pay.

**Section 5.5**     Working hours of employees shall not be changed for the purpose of avoiding the payment of overtime rates. All hours of a holiday for which an employee does not work but is paid shall count as time worked for calculating overtime.

## ARTICLE 6 - LAYOFFS

**Section 6.1**     In the event of a layoff or recall, the principal of seniority on a classification basis shall be followed in determining who shall be laid off or recalled. The ability of the employee to perform a given task within the classification may be considered by a Club for the purpose of varying the classification seniority rule. Each Club agrees that it will not unreasonably vary such rule.

# EXHIBIT B

# EXHIBIT B

Apr 02 08 01:33p   LAW OFFICE OF DAVID WIMS                6469939552              p.13



| CO. | FILE | DEPT. | CLOCK NUMBER | 040 |
| FPB | 060542 | 320 | 0041882185 | 1 |

# Earnings Statement

BRAE BURN COUNTRY CLUB
BRAE BURN DRIVE
PURCHASE, NEW YORK 10577
PAYROLL ACCOUNT

Period Ending:    07/16/2006
Pay Date:         07/20/2006

Taxable Marital Status: Single
Exemptions/Allowances:
  Federal: 3
  State:   3

DEMETRIUS WRIGHT
17 SOUTH SECOND AVE
NEW YORK, NY 10550

Social Security Number: XXX-XX-6578

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 9.0000 | 40.00 | 350.00 | |
| Overtime | 13.5000 | 32.50 | 438.75 | |
| | | | | 7,463.25 |

| Deductions | Statutory | | |
|------------|-----------|---|---|
| | Federal Income Tax | -76.54 | 821.79 |
| | Social Security Tax | -49.52 | 462.72 |
| | Medicare Tax | -11.58 | 108.22 |
| | NY State Income Tax | -33.94 | 272.79 |
| | NY SUI/SDI Tax | -0.60 | 7.20 |
| | **Other** | | |
| | Dues | | 94.00 |

Your federal taxable wages this period are $798.75

Apr 02 06 01:33p    LAW OFFICE OF DAVID WIMS    6463939552    p.14

**Earnings Statement**

CO.   FILE   DEPT.   CLOCK   NUMBER   040
FP8   090542  320         0041675846   1

BRAE BURN COUNTRY CLUB
BRAE BURN DRIVE
PURCHASE, NEW YORK 10577
PAYROLL ACCOUNT

Period Ending:    07/09/2006
Pay Date:         07/13/2006

Taxable Marital Status: Single
Exemptions/Allowances:
   Federal: 3
   State:   5

DEMETRIUS WRIGHT
17 SOUTH SECOND AVE
NEW YORK, NY 10550

Social Security Number: XXX-XX-6576

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 9.0000 | 40.00 | 360.00 | |
| Overtime | 13.5000 | 38.00 | 513.00 | |
| Hol | 9.0000 | 8.00 | 72.00 | |
| | | | | 6,564.50 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -111.95 | 646.25 |
| | Social Security Tax | -58.59 | 413.20 |
| | Medicare Tax | -13.71 | 96.64 |
| | NY State Income Tax | -43.96 | 238.95 |
| | NY SUI/SDI Tax | -0.60 | 6.60 |
| | **Other** | | |
| | Dues | -26.00 | 84.00 |

Your federal taxable wages this period are $945.00

CO.    FILE    DEPT.    CLOCK NUMBER    040
FPB    DS0542    820    0041657402    1

**Earnings Statement**

BRAE BURN COUNTRY CLUB
BRAE BURN DRIVE
PURCHASE, NEW YORK 10577
PAYROLL ACCOUNT

Period Ending:    07/02/2006
Pay Date:    07/06/2006

Taxable Marital Status: Single
Exemptions/Allowances:
    Federal:  3
    State:    3

DEMETRIUS WRIGHT
17 SOUTH SECOND AVE
NEW YORK, NY 10550

Social Security Number: XXX-XX-6576

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 9.0000 | 40.00 | 360.00 | |
| Overtime | 13.5000 | 35.00 | 472.50 | |
| | | | | 5,719.50 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -83.82 | 433.30 |
| | Social Security Tax | -51.62 | 354.61 |
| | Medicare Tax | -12.07 | 82.93 |
| | NY State Income Tax | -36.25 | 194.89 |
| | NY SUI/SDI Tax | -0.60 | 5.00 |
| | Other | | |
| | Dues | | 56.00 |

Your federal taxable wages this period are $832.50

CIV. ACTION #:

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
DEMETRIUS WRIGHT,

Plaintiff,

-against-

BRAE BURN COUNTRY CLUB, INC.,

Defendant.
-------------------------------------------------------------X

## COMPLAINT

Law Office of David Wims
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550
Fax (646) 393-9552

This certification, pursuant to Federal Rule of Civil Procedure 11,

applies to the following within papers:

(X)    Complaint

Dated:  March 28, 2008         Signature _____

David C. Wims

**EXHIBIT 3**

Peter M. Panken, Esq.
Tracey A. Cullen, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177-1211
Telephone: (212) 351-4500
Facsimile: (212) 661-0989

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEMETRIUS WRIGHT,                                  :

        Plaintiff, on behalf of himself and all :    08 CV 3172 (DC)
        others similarly situated,               :

             – against –                           :    **OFFER OF JUDGMENT**
                           :    **PURSUANT TO RULE 68**

BRAE BURN COUNTRY CLUB, INC.,                      :

        Defendant.                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Pursuant to Rule 68 of the Federal Rules of Civil Procedure, defendant BRAE

BURN COUNTRY CLUB, INC. offers to allow judgment to be taken against it in favor of and

with respect to the action filed by Demetrius Wright  (1) in the amount of $1,000, inclusive of all

damages, liquidated damages and interest, and; (2) in addition, reasonable attorney's fees, costs,

expenses and reasonable expert fees actually incurred, to which Plaintiff is entitled by law, in an

amount to be determined by the Court.

This offer will be deemed withdrawn unless Plaintiff serves a written notice of

acceptance of the offer within 10 days of the date that it was served on Plaintiff.  This offer is

made for the purposes of Rule 68 only, and neither it nor any judgment resulting from this offer

may be construed as an admission (a) of liability on the part of Defendant; or (b) that Plaintiff (or

any putative class or collective action member) has suffered any damage.

New York, New York
May 5, 2008

EPSTEIN BECKER & GREEN, P.C.

By:   /s Tracey A. Cullen
      Peter M. Panken, Esq.
      Tracey A. Cullen, Esq.
250 Park Avenue
New York, New York  10177-1211
Telephone:  (212) 351-4500
Facsimile:  (212) 661-0989
      Attorneys for Defendant

**EXHIBIT 4**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEMETRIUS WRIGHT,                                  :

        Plaintiff, on behalf of himself and all :    08 CV 3172 (DC)
        others similarly situated,                :

           – against –                          :    **AFFIDAVIT OF**
                                       :    **MARIA CONTE**

BRAE BURN COUNTRY CLUB, INC.,                      :

        Defendant.                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        MARIA CONTE, being sworn states:

        1.    I am the Controller of Brae Burn Country Club, Inc. ("Defendant" or "Club"). I make this affidavit in support of the Club's motion to dismiss the instant lawsuit against Defendant because the only plaintiff Demetrius Wright ("Plaintiff") received a Federal Rule 68 Offer of Judgment for an amount exceeding any recovery he could receive on his claims.

        Plaintiff's Claim

        2.    I have been informed that Plaintiff's suit contends that for the purposes of computing overtime compensation, his regular rate of pay should be increased by an amount reflecting the cost or other value of his lodging in a dormitory on Defendant's premises and the meals he received while working at the Club.

        Plaintiff's Employment History

        3.    Plaintiff worked at the Club as a laundry room attendant from April 27, 2006 through April 22, 2007. The only times he worked over 40 hours in a work week were during 2006. Each week from the week ending May 14, 2006 through the week ending October 27, 2006, Plaintiff worked in excess of 40 hours. He also worked one additional hour beyond 40 during the week ending November 5, 2006. He did not work over 40 hours in any other week

during his entire employment at the Club.  Attached as Exhibit A are records indicating the hours Plaintiff worked while employed by Defendant.

4.    During the weeks in which he worked overtime, Plaintiff was compensated at the rate of $9.00 per hour for all hours worked up to 40 in each work week, and at the rate of $13.50 per hour for all hours worked in excess of 40 in each work week.

5.    In this lawsuit, Plaintiff claims that he should receive an additional amount of overtime compensation based upon adding the cost of meals and lodging to his regular rate each week.

6.    Under Plaintiff's theory, in order to calculate the amount he claims to be owed, Plaintiff's regular hourly rate would be increased by the cost or value of the dormitory facility he used plus the cost or value of the meals he ate while working at the Club divided each week by the number of hours he worked. Since he was already compensated for all hours worked (including time and one half for overtime hours at his $9.00 per hour regular rate) if he is correct, Plaintiff would only be entitled to one-half of the additional amount added to his regular rate multiplied by the number of overtime hours he worked during that week.

The Cost or Value of the Meals

7.    Staff and independent contractors working at the Club were provided with a communal meal prepared for the staff.  It was not an a la carte meal from the Club's regular menu. Normally, the  meal would be assembled in the kitchen from items that were left over from the previous meal's service or occasionally, would be simple and inexpensive meals like cold cuts and bread with cole slaw and perhaps salad if that was available.  The staff had no choice; they were only offered the food that was prepared for the staff.  It is estimated that the

costs of such meal did not exceed $2.45 per person; in fact, our chef estimates that each meal is worth approximately $1.50.

### The Cost or Value of the Lodging

8.    The lodging was provided in a separate building which in 2006 and 2007 lodged 24 employees in 12 rooms. Each room could only accommodate bunk beds. Six of the rooms were only 9 feet 6 inches deep by 8 feet two inches wide. Five other rooms were only 9 feet 6 inches deep by 12 feet 6½ inches wide, and one handicap accessible room measured 9 feet 6 inches deep and 14 feet 11¼ inches wide.

9.    None of the 12 rooms in the dormitory had private washing or bathroom facilities. Instead, there was one communal bathroom for the 24 employees and one handicapped accessible bathroom. There were no kitchen facilities in the dormitory.

10.    When built, the cost of the dormitory building was $490,905. If the building was depreciated over 27 years, the weekly cost per employee would be $14.57 ($490,905 divided by 27 years divided by 24 places divided by 52 weeks) or $2.28 per day. If the building was depreciated over only 20 years, the weekly cost per employee would be $19.67 ($490,905 divided by 20 years divided by 24 places divided by 52 weeks) or $2.81 per day.

11.    The average annual cost of operating the dormitory was $7,637 per year and the cost in 2006 (when Plaintiff worked overtime) was $9,185.46. If the average annual operating cost was $7,637, the per person weekly cost would be $6.12 ($7,637 divided by 24 places divided by 52 weeks) or eighty-seven ($.87) cents per day. If the annual cost for 2006 was used, the weekly cost would be $7.36 per week ($9,185.46 divided by 24 places divided by 52 weeks divided by 7 days) or $1.05 per day.

12.    The ranges of weekly costs for a bunk in the dormitory would therefore be from as little as $20.68 per week [$490,905 cost of the building divided by 27 years divided by 24 places divided by 52 weeks] plus ($7,637 operating cost divided by 24 places divided by 52 weeks) to $27.02 per week to ($490,905 cost of the building divided by 20 years divided by 24 places divided by 52 weeks) plus ($9,185.46 divided by 24 places divided by 52 weeks divided by 7 days).

13.    In each week where Plaintiff worked overtime hours he was paid his $9.00 per hour regular rate for the first 40 hours plus $13.50 per hour for all hours worked over 40. Plaintiff contends his regular rate each week should be increased due to the meals and lodging he received. The formula for the extra overtime compensation would be (the cost of the meals and lodging) divided by (the hours worked) multiplied by (.5) multiplied by (the number of overtime hours worked):

$$\frac{(\$Meals + Lodging)}{(Hours\ worked)} \times .5 \times overtime\ hours$$

14.    For example, in the week ending August 27, 2007, Plaintiff worked 54 hours and consumed 7 meals at the Club. Thus, at $27.02 maximum per week lodging and $2.45 per meal ($17.15), he received meals and lodging costing an additional $42.15 for the 54 hours he worked or seventy-eight ($.78) cents per hour added to his $9.00 regular rate. Based on this, one-half of $.78 per hour would be thirty nine ($.39) cents per hour for his 14 hours of overtime would total an additional $5.46. that week. At the $20.68 minimum, Plaintiff would claim no more than an additional $4.90 for that week.

15. As another example for the week ended July 9, 2006, the calculation is as follows:

Plaintiff could claim a maximum of $12.55 –

$$\frac{(\text{Meals} = \$24.50 + \text{Lodging} = \$27.02 \text{ x } .5 \text{ x } 38 \text{ overtime hours})}{78 \text{ Hours}} = \$12.55$$

Or a minimum of $11.05 -

$$\frac{(\text{Meals} = \$24.50 + \text{Lodging} = \$20.68 \text{ x } .5 \text{ x } 38 \text{ overtime hours})}{78 \text{ Hours}} = \$11.00$$

16. Attached as Exhibit B is an analysis reflecting each and every week Plaintiff worked overtime using the maximum rates which totals $154.82 in additional compensation. Attached as Exhibit C is an analysis using the minimum rates which total $132.27.

17. Even if liquidated damages should be added to the amount payable to the Plaintiff, it is clear that the maximum liability based on costs plus liquidated damages would be no more than $310 and, therefore, the offer of judgment of $1,000 plus reasonable attorney's fees to the date of the offer far exceeds any amount which the Plaintiff could recover in this case.

18. The United States Department of Labor Wage and Hour Division has investigated this claim, and has calculated that the most Plaintiff might be owed is $119.10, an amount which Brae Burn has already agreed to pay.

19. I am informed that whether or not the Plaintiff accepts that judgment, the Plaintiff is removed from the case and as a result, the case should be dismissed as there is no proper representative of the putative members of the opt-in or opt-out class.

20. The Club, accordingly, respectfully requests that the above-entitled action be dismissed with prejudice.

_____
Maria Conte

Sworn to before me this
__13rd__ day of May 2008.

_____
Notary Public

KAREN D. WILLIAMS
NOTARY PUBLIC - STATE OF NEW YORK
NO. 01-WI6064649
QUALIFIED IN DUTCHESS COUNTY
MY COMMISSION EXPIRES 10-01-20 09

- 6 -

**EXHIBIT A**



**ADP**

## AUTOPAY
## EMPLOYEE EARNINGS RECORD

BRAE BURN COUNTRY C    09/30/2006 (FPB)

Employee: WRIGHT, DEMETRIUS
1 SOUTH SECOND AVE
NEW YORK, NY 10550

Social Security: XXX-XX-6575
Date: 04/27/2006 04/06/1987

Employee Number: 090542

| PAY PERIOD | DEPT | RATE | REGULAR HOURS | O/T HOURS | OTHER HOURS | REGULAR | OVERTIME | OTHER | GROSS PAY | STATUTORY DEDUCTIONS | VOLUNTARY DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 0702 | 320 | 9.0000 | 3500 | | | 36000 | 47250 | | 83250 | | | 648.14 |
| 02 0709 | 320 | 9.0000 | 4000 | 8000 | 7200 H | 36000 | 51200 | | 94500 | | 2800 | 689.18 |
| 03 0716 | 320 | 9.0000 | 3250 | | | 36000 | 43875 | | 79875 | | | 626.57 |
| 04 0723 | 320 | 9.0000 | 3950 | | | 36000 | 26375 | | 62335 | | | 502.85 |
| 05 0730 | 320 | 9.0000 | 2340 | | | 36000 | 39625 | | 75825 | | | 596.02 |
| 06 0806 | 320 | 9.0000 | 1850 | | | 36000 | 24975 | | 58975 | | 2800 | 465.32 |
| 07 0813 | 320 | 9.0000 | 650 | | | 36000 | 7425 | | 43425 | | | 368.20 |
| 08 0820 | 320 | 9.0000 | 2200 | | | 36000 | 18225 | | 54235 | | 4800 | 441.41 |
| 09 0827 | 320 | 9.0000 | 1400 | | | 36000 | 18900 | | 54800 | | | 450.23 |
| 10 0903 | 320 | 9.0000 | 1300 | | | 36000 | 17500 | | 53550 | | 2800 | 440.59 |
| 11 0910 | 320 | 9.0000 | 1400 | | | 36000 | 18900 | | 55700 | | | 426.93 |
| 12 0917 | 320 | 9.0000 | 1750 | 600 H | 23825 | 36000 | | | 65025 | | | 520.94 |
| 13 0924 | 320 | 9.0000 | 300 | 6400 H | 4050 | 36000 | | | 40050 | | | 343.64 |

| TOTALS | REG HOURS | O/T HOURS | REG PAY | O/T EARN | EARNINGS | GROSS PAY | | | NET PAY |
|---|---|---|---|---|---|---|---|---|---|
| QTR-> | 52000 | 25350 | 468000 | 342225 | 14400 | 826625 | | | 6529.23 |
| YTD-> | | | | | | 1313325 | | | |

1997 AUTOMATIC DATA PROCESSING INC.

# AUTOPAY EMPLOYEE EARNINGS RECORD

**ADP**

| FILE NUMBER | 090542 |
|---|---|
| SOCIAL SECURITY NUMBER | XXX-XX-6575 |
| CLASS ID | M |
| DATE | 04/27/2006 |
| BIRTH | 04/06/1967 |

**EMPLOYEE NAME AND ADDRESS**
WRIGHT, DEMETRIUS
17 SUMMIT SECOND AVE
NEW YORK, NY 10580

| COMPANY NAME | BRAE BURN COUNTRY C |
|---|---|
| STATE | 01NY |
| BRANCH | 19 |
| QUARTER ENDING | 12/31/2006 FPB |
| RECORD NUMBER | 110 |

| PAY NO | PRD NUMBER | DEPT NUMBER | HOURS | RATE | REGULAR | OVERTIME | REGULAR | OVERTIME | EARNINGS 3 | EARNINGS 4 | EARNINGS 5 | EARNINGS 6 | GROSS PAY | FEDERAL TAX | STATE TAX | SOCIAL SECURITY | MEDICARE | AMOUNT | AMOUNT | AMOUNT | NET PAY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | 1001 | 320 | | 9.0000 | 36000 | 700 | 9480 | | | | | | 45450 | 1852 | 1149 | | .60 | 10000 | | | 282.71 |
| 02 | 1008 | 320 | | 9.0000 | 36000 | 750 | 10125 | | | | | | 46125 | 2159 | 658 | 4000 | .60 | | 10000 | | 247.53 |
| 03 | 1015 | 320 | | 9.0000 | 36000 | 800 | 10800 | | | | | | 53100 | 2172 | 3628 | 3660 | .60 | | 10000 | | 337.37 |
| 04 | 1022 | 320 | | 9.0000 | 35100 | | 3375 | | | | | | 33375 | 1903 | 3638 | 5000 | .60 | | 10000 | | 198.33 |
| 05 | 1029 | 320 | | 9.0000 | 36000 | 250 | 3375 | | | | | | 36000 | 1979 | 770 | 5000 | .60 | | 10000 | | 163.20 |
| 06 | 1105 | 320 | | 9.0000 | 36000 | | | | | | | | 36000 | 1197 | 341 | | .60 | | 10000 | | 192.70 |
| 07 | 1112 | 320 | | 9.0000 | 36000 | 100 | 1350 | | | | | | 37350 | 1522 | 2232 | 4000 | .60 | | 10000 | | 311.65 |
| 08 | 1118 | 320 | | 9.0000 | 35100 | | 14450 | H | | | | | 49500 | 3068 | 5545 | 10000 | .60 | | | | 213.20 |
| 09 | 1126 | 320 | | 9.0000 | 36000 | 1600 | | | | | | | 36000 | 2153 | 2237 | 1000 | .60 | | 10000 | | 266.57 |
| 10 | 1203 | 320 | | 9.0000 | 36000 | | 7200 | M | | | | | 43200 | 2652 | 2679 | 10000 | .60 | | | | 213.20 |
| 11 | 1210 | 320 | | 9.0000 | 36000 | 600 | | | | | | | 36000 | 1997 | 1025 | | .60 | | 10000 | | 166.18 |
| 12 | 1215 | 320 | | 9.0000 | 35100 | 250 | 10000 | J | | | | | 35100 | 1097 | 2232 | 10000 | .60 | | | | 100.00 |
| 13 | 1217 | 320 | | 9.0000 | | | | 928 | | | | | 10928 | 1813 | 509 | 928 | | | 10000 | | 160.38 |
| 14 | 1224 | 320 | | 9.0000 | 29250 | 3250 | | | | | | | 29250 | 512 | 571 | | .60 | | | | 308.19 |
| | | 320 | | 9.000 | 35100 | 3900 | | | | | | | 35100 | 1495 | 2124 | 10000 | .60 | | | | |
| | | | | | | | | | | | | | | 1653 | 2127 | | | | | | |
| | | | | | | | | | | | | | | 639 | 509 | | | | | | |

3168 15.34
Hyde 3432 x

| | REG HOURS | O/T HOURS 1 | O/T HOURS 2 | HOURS 4 | HOURS 5 | REG. EARNINGS | O/T EARN. 1 | O/T EARN. 2 | EARNINGS 3 | EARNINGS 4 | EARNINGS 5 | EARNINGS 6 | GROSS PAY | EARNINGS 5 | FEDERAL TAX STATE TAX | SOCIAL SECURITY TAX MEDICARE TAX | CITY TAX BURDN | AMOUNT | | NET PAY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| QTR-> | 50850 | 2800 | | 3200 | | 457650 | 10000 | 10000 | 28800 F | | | | 532378 | 828 | 23118 11652 | 33008 7720 | 780 | 120000 | | 1420.00 |
| YTD-> | | | | | | | | | | | | | 1845703 | 11652 01NY | 127082 57448 | 11442 26763 | 2400 | | | 3140.80 |

WRIGHT, DEMETRIUS
XXX-XX-6575
090542

| COMPANY NAME | BRAE BURN COUNTRY C |
|---|---|
| QUARTER ENDING | 12/31/2006 FPB |

# ADP AUTOPAY
# EMPLOYEE EARNINGS RECORD

**COMPANY NAME:** BRAE BURN COUNTRY C  **QUARTER ENDING:** 03/31/2007  **FPB**

**EMPLOYEE NAME AND ADDRESS:**
WRIGHT, DEMETRIUS
17 SOUTH SECOND AVE
NEW YORK, NY  10550

**CLOCK NO:** 080542  **SOCIAL SECURITY:** XXX-XX-6575  **MARITAL:** M
**DATE:** 04/27/2008  **BIRTH:** 04/06/1967

**STATE:** 01NY  **RECORD NUMBER:** 77

**RATE:** 8.0000

| PP | DEPT | REG HOURS 1 | OT HOURS | HOURS 3 | HOURS 4 | REG EARNINGS | O.T. EARNINGS | EARNINGS 3 | EARNINGS 4 | GROSS PAY | FEDERAL TAX | SOCIAL SECURITY TAX | MEDICARE TAX | STATE TAX | VOLUNTARY DEDUCTIONS | | NET PAY |
|----|------|-------------|----------|---------|---------|--------------|---------------|------------|------------|-----------|-------------|---------------------|--------------|-----------|----------------------|---|---------|
| 01 | 320 | | | | | 279.00 | | | | 498.00 | 30.61 | 30.87 | 7.22 | | | | 412.61 |
| 02 | 320 | | | 3100 | 800 | 351.00 | 14.00 | | | 420.00 | 13.51 | 26.03 | 6.09 | 4000 D | | | 321.05 |
| 03 | 320 | | | 3900 | 800 | | 72.00 N | | | | 5.09 | 24.63 | 5.83 | | | | 292.69 |
| 04 | 320 | | | 3700 | 800 | 333.00 | | | | 333.00 | 5.85 | 20.65 | 4.83 | | | | 313.78 |
| 05 | 320 | | | 4000 | | 360.00 | 72.00 S | | | 432.00 | 20.56 | 26.79 | 6.26 | | | | 367.54 |
| 06 | 320 | | | 4000 | | 360.00 | | | | 360.00 | 11.29 | 22.32 | 5.22 | | | | 313.78 |
| 07 | 320 | | | 2600 | | 244.40 | | | | 244.40 | 6.79 | 15.15 | 3.55 | 6000 D | | | 143.00 |
| 08 | 320 | | | 4000 | | 376.00 | | | | 376.00 | 21.02 | 23.31 | 5.45 | | | | 326.24 |
| 09 | 320 | | | 3900 | | 371.30 | | | | 371.30 | 17.51 | 23.02 | 5.38 | | | | 322.58 |
| | 320 | | | 4000 | | 376.00 | | | | 376.00 | 13.99 | 23.31 | 5.46 | | | | 326.23 |

| TAXABLE | REG HOURS 1 | OT HOURS | HOURS 3 | HOURS 4 | REG EARNINGS | O.T. EARNINGS | EARNINGS 3 | EARNINGS 4 | GROSS PAY | STATE UNEMPL | CITY | FEDERAL TAX STATE TAX | SOCIAL SECURITY TAX MEDICARE TAX | CITY TAX | VOLUNTARY DEDUCTIONS | TOT. VOL. DED. NET PAY |
|---------|-------------|----------|---------|---------|--------------|---------------|------------|------------|-----------|--------------|------|------------------------|-----------------------------------|----------|----------------------|-------------------------|
| QTR-> | 800 | | 33250 | 2400 | 309070 | | 14400 | 21600 | 341070 | 280 01NY | | 12788 | 21646 | | 540 | 120.00 |
| YTD-> | 800 | | 33250 | 2400 | 309070 | | 14400 | 21600 | 341070 | | | 12788 7080 4848 | 21646 4848 | | 540 | 2825.72 |

**COMPANY NAME:** BRAE BURN COUNTRY C  **QUARTER ENDING:** 03/31/2007  **FPB**

**EMPLOYEE NAME:** WRIGHT, DEMETRIUS
**SOCIAL SECURITY:** XXX-XX-6575  **FILE NUMBER:** 080542

1997 AUTOMATIC DATA PROCESSING INC.

ADP
AUTOPAY
EMPLOYEE EARNINGS RECORD

WRIGHT, DEMETRIUS
17 SOUTH SECOND AVE
NEW YORK, NY    10550

090542    XXX-XX-6575    M    04/27/2006 04/06/1967

BRAE BURN COUNTRY C    06/30/2007    141

WRIGHT, DEMETRIUS
090542    XXX-XX-6575
BRAE BURN COUNTRY C    06/30/2007    FPB

1997 AUTOMATIC DATA PROCESSING INC.

**EXHIBIT B**

D Wright

| | HOURS WORKED | | | $ | 9.00 | per meal 2.45 | per week 27.02 | |
|---|---|---|---|---|---|---|---|---|
| | REG | OT | Total | REG | OT | Meals | Lodging | Xtra OT Due |
| 14-May | 40 | 6 | 46 | $ 360.00 | $ 81.00 | 14.70 | 27.02 | 2.72 |
| 21-May | 40 | 5 | 45 | $ 360.00 | $ 67.50 | 14.70 | 27.02 | 2.32 |
| 28-May | 40 | 14 | 54 | $ 360.00 | $ 189.00 | 17.15 | 27.02 | 5.73 |
| 4-Jun | 40 | 22.5 | 62.5 | $ 360.00 | $ 303.75 | 19.60 | 27.02 | 8.39 |
| 11-Jun | 40 | 31 | 71 | $ 360.00 | $ 418.50 | 22.05 | 27.02 | 10.71 |
| 18-Jun | 40 | 26.5 | 66.5 | $ 360.00 | $ 357.75 | 19.60 | 27.02 | 9.29 |
| 25-Jun | 40 | 19 | 59 | $ 360.00 | $ 256.50 | 17.15 | 27.02 | 7.11 |
| 2-Jul | 40 | 35 | 75 | $ 360.00 | $ 472.50 | 24.50 | 27.02 | 12.02 |
| 9-Jul | 40 | 38 | 78 | $ 360.00 | $ 513.00 | 24.50 | 27.02 | 12.55 |
| 16-Jul | 40 | 32.5 | 72.5 | $ 360.00 | $ 438.75 | 22.05 | 27.02 | 11.00 |
| 23-Jul | 40 | 19.5 | 59.5 | $ 360.00 | $ 263.25 | 17.15 | 27.02 | 7.24 |
| 30-Jul | 40 | 29.5 | 69.5 | $ 360.00 | $ 398.25 | 19.60 | 27.02 | 9.89 |
| 6-Aug | 40 | 18.5 | 58.5 | $ 360.00 | $ 249.75 | 17.15 | 27.02 | 6.98 |
| 13-Aug | 40 | 5.5 | 45.5 | $ 360.00 | $ 74.25 | 14.70 | 27.02 | 2.52 |
| 20-Aug | 40 | 13.5 | 53.5 | $ 360.00 | $ 182.25 | 17.15 | 27.02 | 5.57 |
| 27-Aug | 40 | 14 | 54 | $ 360.00 | $ 189.00 | 17.15 | 27.02 | 5.73 |
| 3-Sep | 40 | 13 | 53 | $ 360.00 | $ 175.50 | 17.15 | 27.02 | 5.42 |
| 10-Sep | 40 | 14 | 54 | $ 360.00 | $ 189.00 | 17.15 | 27.02 | 5.73 |
| 17-Sep | 40 | 17.5 | 57.5 | $ 360.00 | $ 236.25 | 19.60 | 27.02 | 7.09 |
| 24-Sep | 40 | 3 | 43 | $ 360.00 | $ 40.50 | 14.70 | 27.02 | 1.46 |
| 1-Oct | 40 | 7 | 47 | $ 360.00 | $ 94.50 | 17.15 | 27.02 | 3.29 |
| 8-Oct | 40 | 7.5 | 47.5 | $ 360.00 | $ 101.25 | 17.15 | 27.02 | 3.49 |
| 15-Oct | 39 | 8 | 47 | $ 351.00 | $ 108.00 | 17.15 | 27.02 | 3.76 |
| 22-Oct | 40 | 2.5 | 42.5 | $ 360.00 | $ 33.75 | 14.70 | 27.02 | 1.23 |
| 5-Nov | 40 | 1 | 41 | $ 360.00 | $ 13.50 | 12.25 | 27.02 | 0.48 |
| 12-Nov | 40 | 7 | 47 | $ 360.00 | $ 94.50 | 14.70 | 27.02 | 3.11 |
| | | | | | | | | 154.82 |

**EXHIBIT C**

D Wright

| | HOURS WORKED | | | $ | | per meal | per week | |
| | REG | OT | Total | REG | OT | Meals | Lodging | Xtra OT Due |
| | | | | | 9.00 | 2.45 | 20.3 | |
|---|---|---|---|---|---|---|---|---|
| 14-May | 40 | 6 | 46 | $ 360.00 | $ 81.00 | 14.70 | 20.30 | 2.28 |
| 21-May | 40 | 5 | 45 | $ 360.00 | $ 67.50 | 14.70 | 20.30 | 1.94 |
| 28-May | 40 | 14 | 54 | $ 360.00 | $ 189.00 | 17.15 | 20.30 | 4.85 |
| 4-Jun | 40 | 22.5 | 62.5 | $ 360.00 | $ 303.75 | 19.60 | 20.30 | 7.18 |
| 11-Jun | 40 | 31 | 71 | $ 360.00 | $ 418.50 | 22.05 | 20.30 | 9.25 |
| 18-Jun | 40 | 26.5 | 66.5 | $ 360.00 | $ 357.75 | 19.60 | 20.30 | 7.95 |
| 25-Jun | 40 | 19 | 59 | $ 360.00 | $ 256.50 | 17.15 | 20.30 | 6.03 |
| 2-Jul | 40 | 35 | 75 | $ 360.00 | $ 472.50 | 24.50 | 20.30 | 10.45 |
| 9-Jul | 40 | 38 | 78 | $ 360.00 | $ 513.00 | 24.50 | 20.30 | 10.91 |
| 16-Jul | 40 | 32.5 | 72.5 | $ 360.00 | $ 438.75 | 22.05 | 20.30 | 9.49 |
| 23-Jul | 40 | 19.5 | 59.5 | $ 360.00 | $ 263.25 | 17.15 | 20.30 | 6.14 |
| 30-Jul | 40 | 29.5 | 69.5 | $ 360.00 | $ 398.25 | 19.60 | 20.30 | 8.47 |
| 6-Aug | 40 | 18.5 | 58.5 | $ 360.00 | $ 249.75 | 17.15 | 20.30 | 5.92 |
| 13-Aug | 40 | 5.5 | 45.5 | $ 360.00 | $ 74.25 | 17.15 | 20.30 | 2.12 |
| 20-Aug | 40 | 13.5 | 53.5 | $ 360.00 | $ 182.25 | 17.15 | 20.30 | 4.73 |
| 27-Aug | 40 | 14 | 54 | $ 360.00 | $ 189.00 | 17.15 | 20.30 | 4.85 |
| 3-Sep | 40 | 13 | 53 | $ 360.00 | $ 175.50 | 17.15 | 20.30 | 4.59 |
| 10-Sep | 40 | 14 | 54 | $ 360.00 | $ 189.00 | 19.60 | 20.30 | 4.85 |
| 17-Sep | 40 | 17.5 | 57.5 | $ 360.00 | $ 236.25 | 14.70 | 20.30 | 6.07 |
| 24-Sep | 40 | 3 | 43 | $ 360.00 | $ 40.50 | 17.15 | 20.30 | 1.22 |
| 1-Oct | 40 | 7 | 47 | $ 360.00 | $ 94.50 | 17.15 | 20.30 | 2.79 |
| 8-Oct | 40 | 7.5 | 47.5 | $ 360.00 | $ 101.25 | 17.15 | 20.30 | 2.96 |
| 15-Oct | 39 | 8 | 47 | $ 351.00 | $ 108.00 | 14.70 | 20.30 | 3.19 |
| 22-Oct | 40 | 2.5 | 42.5 | $ 360.00 | $ 33.75 | 14.70 | 20.30 | 1.03 |
| 5-Nov | 40 | 1 | 41 | $ 360.00 | $ 13.50 | 12.25 | 20.30 | 0.40 |
| 12-Nov | 40 | 7 | 47 | $ 360.00 | $ 94.50 | 14.70 | 20.30 | 2.61 |
| | | | | | | | | 132.27 |

**EXHIBIT 5**

## Tracey A. Cullen

| | |
|---|---|
| **From:** | David Wims [davidwims@hotmail.com] |
| **Sent:** | Tuesday, May 27, 2008 9:02 AM |
| **To:** | Peter M. Panken |
| **Cc:** | Tracey A. Cullen |

**Subject:** RE: Wright v. Brae Burn (08CV3172)(SDNY)

Can I get an offer with lunch valued at $8 and dinner at $12? Otherwise, my client will testify that he consumed steaks, chicken breasts and caviar. Also, let me get the lodging valued at $25/day. Thanks.

Law Office of David Wims
David C. Wims, Esq.
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550
Fax (646) 393-9552
davidwims@hotmail.com

Subject: RE: Wright v. Brae Burn (08CV3172)(SDNY)
Date: Fri, 23 May 2008 15:53:16 -0400
From: PPanken@ebglaw.com
To: davidwims@hotmail.com
CC: TCullen@ebglaw.com

I would need to know the off teh clock hours they claim, including the dates they allege they worked off the clock and , of course what were your fees and costs. As you might surmise, my client does not think they did any off the clock work ( and indeed believe that on several occassions at least one of your clients disappeared from his post and was found off his workstation not working.) In addition, I am told only one of your clients received lodging so I am at a loss to understand how he could have been owedwhat you claim.

Peter M. Panken, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York  10177
(212) 351-4840 (Direct)
(212) 878-8630 (Fax)
ppanken@ebglaw.com

**From:** David Wims [mailto:davidwims@hotmail.com]
**Sent:** Friday, May 23, 2008 3:40 PM
**To:** Peter M. Panken
**Cc:** Tracey A. Cullen
**Subject:** RE: Wright v. Brae Burn (08CV3172)(SDNY)
**Importance:** High

Mr. Panken,

**EXHIBIT 6**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
DEMETRIUS WRIGHT,

                             Plaintiff, on
on behalf of himself and all others similarly situated,

                 -against-

BRAE BURN COUNTRY CLUB, INC.,

                          Defendant.
-----------------------------------------------------X

Civil Action No.: 08CV3172
(DC)(ECF)

**First Amended Complaint**

**Jury Trial Demanded**

Plaintiff Demetrius Wright, by his attorney, David C. Wims, amends his Complaint as of

right, and alleges, on behalf of himself and all others similarly situated who opt into this

action, as follows:

**NATURE OF ACTION**

1. This is a challenge to Defendant's unlawful practices of paying its non-exempt

employees for overtime at one and one-half (1.5) times their 'hourly rate', as opposed to

their 'regular rate', as required by law; and failing to pay for all hours worked. For years,

Defendant failed to include all remuneration for employment, such as the value of

lodging and meals, in its overtime calculations, and received the benefit of "off the clock"

work. In sum, Defendant - for years - simply has grossly underpaid Plaintiff and other

similarly situated employees.

2. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), Plaintiff

alleges that he is: (i) entitled to unpaid compensation for hours worked but unpaid, (ii)

entitled to unpaid overtime wages from Defendant for his work beyond forty hours per

week; and (iii) entitled to liquidated damages equal to his unpaid wages under the FLSA.

1

3. Pursuant to the New York Labor Law, Article 6 (unpaid hourly wages) and 19 (unpaid overtime wages), and implementing regulations, Plaintiff alleges that he is: (i) entitled to unpaid compensation for hours worked but unpaid, (ii) entitled to unpaid overtime wages from Defendant for his work beyond forty hours per week; (iii)entitled to call in pay and spread of hours pay; and, (iv) entitled to liquidated damages equal to twenty-five percent of his unpaid wages under the New York Labor Law.

4. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings his FLSA claim as a collective action on behalf of himself and all other similarly situated employees of Defendant who elect to opt into this action.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's Labor Law and contract claims pursuant to 28 U.S.C. 1367. In addition, this Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. § 216 (b).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a), as the events giving rise to the claim occurred therein.

## FACTUAL ALLEGATIONS

*The Parties*

7. Plaintiff Demetrius Wright is an adult male residing in the State of New York, County of Westchester.

8. Defendant Brae Burn Country Club, Inc. is a domestic not-for-profit corporation doing business within the State of New York, County of Westchester.

2

9. Defendant owns and/or operates the real property located at Brae Burn Drive, Purchase, NY 10577.

*Statutory Coverage*

10. From approximately April 2006 to April 2007, Plaintiff was employed by Defendant within the meaning of §§ 2, 190, and 651 of the New York Labor Law.

11. From approximately April 2006 to present, Plaintiff was employed by Defendant within the meaning of 29 U.S.C. § 203 of the FLSA.

12. In performing his duties for Defendant, Plaintiff was engaged in commerce within the meaning of the FLSA.

13. In performing his duties for Defendant, Plaintiff used goods and products that had been moved or produced in interstate commerce.

14. From the commencement of Plaintiff's employment and before, to the filing of this Complaint, Defendant has been an enterprise engaged in commerce within the meaning of the FLSA.

15. From the commencement of Plaintiff's employment and before, to the filing of this Complaint, Defendant has used goods and products that have been moved or produced in interstate commerce.

*The Parties' Employment Relationship*

16. Plaintiff worked for Defendant from April 2006 to April 2007 (hereinafter, the "Covered Period").

17. Throughout the Covered Period, Plaintiff worked for Defendant as a laundry room attendant.

3

*Plaintiff's Work Hours and Schedules*

18. Throughout the Covered Period, Plaintiff was a full-time employee of Defendant subject to a collective bargaining agreement ("CBA"). (Attached as Exhibit "A").

19. The CBA guaranteed Defendant's employees greater labor protections than statutory law, including overtime at one and one-half (1.5) times the 'regular rate' for hours worked over eight in a day and forty in a week, *inter alia*.

20. Throughout the Covered Period, Defendant scheduled Plaintiff to work (barring vacation days, sick days, or other days off from his schedule) five, twelve-hour shifts per week, with additional hours and days as needed by Defendant.

21. Plaintiff's work hours for Defendant frequently totaled more than ten hours per day and forty hours per week, sometimes spanning seven days and including split shifts and call-in work; and often included labor performed by plaintiff before or after punching in.

*Plaintiff's Remuneration*

22. Throughout the Covered Period, as consideration for employment, Defendant paid Plaintiff: a) cash wages, b) lodging with utility services, c) health insurance, d) two meals per day, and other forms of remuneration.

23. Throughout the Covered Period, Plaintiff's weekly wages from Defendant varied depending on the number of hours Defendant assigned him to work.

24. Throughout the Covered Period, Defendant paid Plaintiff overtime premium compensation of one and one-half (1.5) times his 'hourly rate' of pay for hours he worked beyond forty per week.

25. Throughout the Covered Period, however, Defendant did not include the value of the lodging and appurtenant services; and meals, into it calculation of plaintiff's 'regular

4

rate'.

26. Throughout the Covered Period, Plaintiff's 'hourly rate' of pay from Defendant varied from approximately $9.00 per hour to $9.40 per hour.

27. Attached to this Complaint as Exhibit "B" are accurate copies of pay stubs Defendant issued to Plaintiff during the Covered Period.

*Collective Action Allegations*

28. During the Covered Period, Defendant employed other employees in the same and other job title(s) as Plaintiff.

29. During the Covered Period, Defendant subjected other employees than Plaintiff to the same overtime pay policies outlined above.

30. Defendant subjected other employees than Plaintiff to the same overtime pay policies outlined above even where those employees had different titles, responsibilities, shifts and work schedules than Plaintiff.

31. Upon information and belief, Defendant continues to subject its employees to the same overtime pay policies it has applied to Plaintiff, as outlined above.

## FIRST CLAIM FOR RELIEF

## FAIR LABOR STANDARDS ACT

32. Plaintiff alleges and incorporates by reference all of the above allegations.

33. Under the FLSA, Plaintiff was entitled to payment for all hours worked and overtime premium compensation from Defendant of one and one-half (1.5) times his 'regular rate' of pay for hours he worked beyond forty per week for Defendant.

34. Under the FLSA, Plaintiff's 'regular rate' of pay includes all remuneration for employment, whether in the form of wages, facilities or some other form, and whether

5

paid directly to Plaintiff or to a third party.

35. By the above course of conduct, Defendant has violated the FLSA.

36. Defendant has violated the FLSA willfully.

37. Upon information and belief, Defendant's practices complained of herein were not approved in writing by the United States Department of Labor ("USDOL") or the New York Department of Labor ("NYDOL").

38. Upon information and belief, Defendant's practices complained of herein were not based on Defendant's (or any of its agents') review of any policy or publication of the USDOL or the NYDOL.

39. Upon information and belief, Defendant's practices complained of herein were not based upon any advice of counsel received by Defendant.

40. Due to Defendant's FLSA violations, Plaintiff is entitled to recover from Defendant his unpaid hourly wages, overtime compensation, liquidated damages, reasonable attorneys' fees, and the costs of this action, pursuant to 29 U.S.C. § 216 (b).

41. Other employees similarly situated to Plaintiff are entitled to the same relief that Plaintiff seeks under the FLSA.

## SECOND CLAIM FOR RELIEF

## NEW YORK LABOR LAW

42. Plaintiff alleges and incorporates by reference all of the above allegations.

43. Under the New York Labor Law, Plaintiff was entitled to payment for all hours worked and overtime premium compensation from Defendant of one and one-half (1.5) times his 'regular rate' of pay for hours he worked beyond forty per week for Defendant.

44. Under the New York Labor Law, Plaintiff's 'regular rate' of pay includes all remuneration for employment, whether in the form of wages, facilities or some other form, and whether paid directly to Plaintiff or to a third party.

45. By the above course of conduct, Defendant has violated the New York Labor Law.

46. Defendant has violated the New York Labor Law willfully.

47. Due to Defendant's New York Labor Law violations, Plaintiff is entitled to recover from Defendant his unpaid hourly wages, overtime compensation, liquidated damages, reasonable attorneys' fees, and the costs of this action, pursuant to New York Labor Law §§ 198, 663(1).

## THIRD CLAIM FOR RELIEF

## BREACH OF CONTRACT

48. At all times herein relevant, Defendant's employment of Plaintiff was covered by the CBA that required overtime at one and one-half (1.5) times the 'regular rate' for hours worked: a) over eight in a day or forty in a week, and, b) on the sixth day of any week, *inter alia*.

49. Plaintiff was also entitled to two times the 'regular rate' on the seventh day in a week.

50. Throughout Plaintiff's employment, Defendant failed to pay overtime compensation as required by the CBA, as indicated above, and when Plaintiff notified Defendant's agent of the same, no adjustment was had.

51. Defendant has breached the CBA, causing Plaintiff damages.

52. Due to Defendant's CBA breach, Plaintiff is entitled to recover from Defendant his unpaid overtime compensation.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

53. Award Plaintiff the following unpaid wages:

a. his unpaid hourly wages under the FLSA;

b. his unpaid hourly wages under the New York Labor Law;

c. his unpaid overtime compensation due under the FLSA;

d. his unpaid overtime compensation due under the New York Labor Law; and

e. his unpaid regular and overtime compensation due under the CBA; and

54. Award Plaintiff the following liquidated damages:

a. liquidated damages equal to his unpaid compensation under the FLSA; and

b. liquidated damages equal to an additional twenty-five percent of his unpaid

compensation under the New York Labor Law; and

55. Award Plaintiff pre-judgment interest; and

56. Award Plaintiff reasonable attorney's fees as well as the costs of this action; and

57. Award all similarly situated employees who opt into this action the same relief that

Plaintiff is awarded under the FLSA; and

58. Award such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

59. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a

trial by jury on all questions of fact raised by the Complaint.

Dated: 05/19/08

Brooklyn, NY

LAW OFFICE OF DAVID WIMS
David C. Wims, Esq. (DW-6964)
*Attorney for Plaintiff*
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550

EXHIBIT A

EXHIBIT A

## ARTICLE 5 - WORKWEEK AND OVERTIME

Section 5.1    The normal workweek for all full-time employees shall be scheduled over five (5) consecutive days of eight (8) consecutive hours each day plus one (1) additional nonpaid hour for an eating period, as close to the middle of the working day as shall be practicable. Without limiting the Club's authority and rights under Article 31 hereof, the Club may alter the schedule when work is not available because of weather, Act of God or other cause beyond the control of the Club.

Section 5.2    For outside employees who had at least three (3) years seniority as of February 1, 1984, the workweek shall be forty (40) hours, to begin on Monday and end on Friday.

1. All work performed by such employees on Saturday shall be paid at the rate of time-and-one-half (1-1/2) times the regular rate of pay, with a guaranty that any Grounds Foreperson, Groundskeeper or Mechanic called to work on Saturday shall be guaranteed at least three (3) hours of work.

2. All work performed by such employees on Sunday shall be at two (2) times the regular hourly rate of pay, with a guaranty that any Grounds Foreperson, Groundskeeper or Mechanic called to work on Sunday shall be guaranteed at least three (3) hours of work.

Section 5.3    For all employees not covered by Section 5.2, all hours worked on the sixth (6th) day in a regular workweek shall be paid at the rate of one-and-one-half (1-1/2) times the regular rate of pay. All hours worked on the seventh (7th) day in a regular workweek shall be paid at two (2) times the regular rate of pay. 

Section 5.4    Hours worked in excess of eight (8) hours in any one day or hours worked in excess of forty (40) hours in a regular workweek shall be paid for at the rate of time-and-one-half the regular rate of pay. 

Section 5.5    Working hours of employees shall not be changed for the purpose of avoiding the payment of overtime rates. All hours of a holiday for which an employee does not work but is paid shall count as time worked for calculating overtime.

## ARTICLE 6 - LAYOFFS

Section 6.1    In the event of a layoff or recall, the principal of seniority on a classification basis shall be followed in determining who shall be laid off or recalled. The ability of the employee to perform a given task within the classification may be considered by a Club for the purpose of varying the classification seniority rule. Each Club agrees that it will not unreasonably vary such rule.

**EXHIBIT B**

**EXHIBIT B**

```
CO.    FILE    DEPT.   CLOCK  NUMBER    040
FPB    090542  320            0041692185  1
```

BRAE BURN COUNTRY CLUB
BRAE BURN DRIVE
PURCHASE, NEW YORK 10577
PAYROLL ACCOUNT

Taxable Marital Status: Single
Exemptions/Allowances:
Federal: 3
State:   3

**Earnings Statement**

Period Ending:     07/16/2006
Pay Date:          07/20/2006

DEMETRIUS WRIGHT
17 SOUTH SECOND AVE
NEW YORK, NY 10550

Social Security Number: XXX-XX-6575

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 9.0000 | 40.00 | 360.00 | |
| Overtime | 13.5000 | 32.50 | 438.75 | |
| Gross Pay | | | $798.75 | 7,463.25 |

| Deductions | Statutory | this period | year to date |
|---|---|---|---|
| | Federal Income Tax | -76.54 | 621.79 |
| | Social Security Tax | -49.52 | 462.72 |
| | Medicare Tax | -11.58 | 108.22 |
| | NY State Income Tax | -33.94 | 272.79 |
| | NY SUI/SDI Tax | -0.60 | 7.20 |
| | Other | | |
| | Dues | | 84.00 |
| | Net Pay | $626.57 | |

Your federal taxable wages this period are $798.75

CO.    FILE    DEPT.    CLOCK    NUMBER    040
FPB    090542  320               0041675396  1

BRAE BURN COUNTRY CLUB
BRAE BURN DRIVE
PURCHASE, NEW YORK 10577
PAYROLL ACCOUNT

Taxable Marital Status: Single
Exemptions/Allowances:
    Federal:  3
    State:    3

Social Security Number: XXX-XX-6575

# Earnings Statement



Period Ending:    07/09/2006
Pay Date:         07/13/2006

DEMETRIUS WRIGHT
17 SOUTH SECOND AVE
NEW YORK, NY 10550

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 9.0000 | 40.00 | 360.00 | |
| Overtime | 13.5000 | 38.00 | 513.00 | |
| Hol | 9.0000 | 8.00 | 72.00 | |
| Gross Pay | | | $945.00 | 6,664.50 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Federal Income Tax | -111.95 | 545.25 |
| | Social Security Tax | -58.59 | 413.20 |
| | Medicare Tax | -13.71 | 96.64 |
| | NY State Income Tax | -43.96 | 238.85 |
| | NY SUI/SDI Tax | -0.60 | 6.60 |
| | Other | | |
| | Dues | -28.00 | 84.00 |
| Net Pay | | $688.19 | |

Your federal taxable wages this period are $945.00

CO. FILE DEPT. CLOCK NUMBER 040
FPB 090542 320 0041657402 1

*BRAE BURN COUNTRY CLUB*
*BRAE BURN DRIVE*
*PURCHASE, NEW YORK 10577*
*PAYROLL ACCOUNT*

## Earnings Statement

Period Ending: 07/02/2006
Pay Date: 07/06/2006

Taxable Marital Status: Single
Exemptions/Allowances:
Federal: 3
State: 3

DEMETRIUS WRIGHT
17 SOUTH SECOND AVE
NEW YORK, NY 10550

Social Security Number: XXX-XX-6575

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 9.0000 | 40.00 | 360.00 | |
| Overtime | 13.5000 | 35.00 | 472.50 | |
| Gross Pay | | | $832.50 | 5,719.50 |

| Deductions | Statutory | this period | year to date |
|---|---|---|---|
| | Federal Income Tax | -83.82 | 433.30 |
| | Social Security Tax | -51.62 | 354.61 |
| | Medicare Tax | -12.07 | 82.93 |
| | NY State Income Tax | -36.25 | 194.89 |
| | NY SUI/SDI Tax | -0.60 | 6.00 |
| | **Other** | | |
| | Dues | | 56.00 |
| | Net Pay | $648.14 | |

Your federal taxable wages this period are $832.50

©2001 Automatic Data Processing, Inc.

EXHIBIT 7

## Tracey A. Cullen

**From:**     David Wims [davidwims@hotmail.com]
**Sent:**     Tuesday, June 03, 2008 1:55 PM
**To:**       Peter M. Panken
**Subject:** RE: Wright v. Brae Burn Country Club, Inc.

$5,000 apiece + $10,000 in attorney's fees + $15,000 to leave your client alone (and not sue it again).  Thanks.

Law Office of David Wims
David C. Wims, Esq.
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550
Fax (646) 393-9552
davidwims@hotmail.com

> Subject: RE: Wright v. Brae Burn Country Club, Inc.
> Date: Tue, 3 Jun 2008 13:42:51 -0400
> From: PPanken@ebglaw.com
> To: davidwims@hotmail.com
>
> If you have a reasonable offer. I will consider it, but the amount you offer is not acceptable.
>
> Peter M. Panken, Esq.
> Epstein Becker & Green, P.C.
> 250 Park Avenue
> New York, New York  10177
> (212) 351-4840 (Direct)
> (212) 878-8630 (Fax)
> ppanken@ebglaw.com

> **From:** David Wims [mailto:davidwims@hotmail.com]
> **Sent:** Tuesday, June 03, 2008 1:08 PM
> **To:** Peter M. Panken
> **Subject:** RE: Wright v. Brae Burn Country Club, Inc.
>
> Your client is in gross noncompliance with its recordkeeping obligations under both federal and state law. It is required to record the start and end times of work for its employees. Many of these cards have days that do not have an end time. Please advise. Thanks.
>
> Law Office of David Wims
> David C. Wims, Esq.
> 1430 Pitkin Ave., 2nd Floor
> Brooklyn, NY 11233
> (646) 393-9550
> Fax (646) 393-9552
> davidwims@hotmail.com

7/29/2008

Subject: RE: Wright v. Brae Burn Country Club, Inc.
Date: Mon, 2 Jun 2008 16:07:46 -0400
From: PPanken@ebglaw.com
To: davidwims@hotmail.com

Are you refusing to detail the hours allegedly worked off the clock?

Peter M. Panken, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York  10177
(212) 351-4840 (Direct)
(212) 878-8630 (Fax)
ppanken@ebglaw.com

**From:** David Wims [mailto:davidwims@hotmail.com]
**Sent:** Monday, June 02, 2008 4:05 PM
**To:** Peter M. Panken
**Subject:** RE: Wright v. Brae Burn Country Club, Inc.

Mr. Panken,

As I'm sure you know, both "off the clock" and "regular rate" claims are cognizable
under the FLSA. Further, FLSA claims may not be waived by a union in the collective
bargaining context (they are waivable by way of individual arbitration clauses).

Additionally, the SD, in Moon, included meals in its calculation of the "regular rate"
under both federal and state law.  Thanks.

Law Office of David Wims
David C. Wims, Esq.
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550
Fax (646) 393-9552
davidwims@hotmail.com

Subject: RE: Wright v. Brae Burn Country Club, Inc.
Date: Mon, 2 Jun 2008 15:30:04 -0400
From: PPanken@ebglaw.com
To: davidwims@hotmail.com

In view of the fact that there is no liability under New York State Law with
respect to overtime rates and that there are no potential parties that can
be added in view of the US Wage Hour decision on the issue, I am at a
loss to understand how you calculate the $5,000 no less the $10,000
legal fees.

Please forward to me the details of any theory you may be espousing so
I can understand your clients claims.

Peter M. Panken, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4840 (Direct)
(212) 878-8630 (Fax)
ppanken@ebglaw.com

---

**From:** David Wims [mailto:davidwims@hotmail.com]
**Sent:** Monday, June 02, 2008 3:22 PM
**To:** Peter M. Panken
**Subject:** RE: Wright v. Brae Burn Country Club, Inc.

Mr. Panken,

I can do $5,000 apiece, and $10,000 in attorney's fees.  Thanks.

Law Office of David Wims
David C. Wims, Esq.
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550
Fax (646) 393-9552
davidwims@hotmail.com

> Subject: Wright v. Brae Burn Country Club, Inc.
> Date: Mon, 2 Jun 2008 12:13:32 -0400
> From: PPanken@ebglaw.com
> To: davidwims@hotmail.com
> CC: PPanken@ebglaw.com
>
> Mr. Wims:
>
> Attached please find a letter from Peter M. Panken, Esq. in connection
> with the above referenced matter. Hard copy will follow by regular
> mail.
>
> Pauline Assael
> Assistant to Peter M. Panken, Esq.
> Epstein Becker & Green, P.C.
> 250 Park Avenue
> New York, New York 10177
> (212) 351-3719 (Direct)
> (212) 661-0989 (Fax)
> (212) 351-4500 (Main)
> passael@ebglaw.com
> www.ebglaw.com
> -------------------------------------------------------------

>
> Confidentiality Note: This e-mail is intended only for the person or
entity to which it is addressed and may contain information that is
privileged, confidential or otherwise protected from disclosure.
Dissemination, distribution or copying of this e-mail or the information
herein by anyone other than the intended recipient, or an employee or
agent responsible for delivering the message to the intended recipient, is
prohibited. If you have received this e-mail in error, please call the Help
Desk of Epstein Becker & Green at 212-351-4701 and destroy the
original message and all copies.
>
> To ensure compliance with requirements imposed by the IRS, we
inform you that any U.S. federal tax advice contained in this
communication (including any attachments) is not intended or written to
be used, and cannot be used, for the purpose of (i) avoiding penalties
under the Internal Revenue Code or (ii) promoting, marketing or
recommending to another party any transaction or matter addressed
herein.
>
> Pursuant to the CAN-SPAM Act this communication may be considered
an advertisement or solicitation. If you would prefer not to receive future
marketing and promotional mailings, please submit your request via
email to ebgus@ebglaw.com or via postal mail to Epstein Becker &
Green, Attn: Marketing Department, 250 Park Avenue, New York, NY
10177. Be sure to include your email address if submitting your request
via postal mail. -EBG1
> --------------------------------------------------------

Change the world with e-mail. Join the i'm Initiative from Microsoft.

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed
and may contain information that is privileged, confidential or otherwise protected from
disclosure. Dissemination, distribution or copying of this e-mail or the information herein by
anyone other than the intended recipient, or an employee or agent responsible for delivering the
message to the intended recipient, is prohibited. If you have received this e-mail in error, please
call the Help Desk of Epstein Becker & Green at 212-351-4701 and destroy the original message
and all copies.

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S.
federal tax advice contained in this communication (including any attachments) is not intended or
written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the
Internal Revenue Code or (ii) promoting, marketing or recommending to another party any
transaction or matter addressed herein.

Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or
solicitation. If you would prefer not to receive future marketing and promotional mailings, please
submit your request via email to ebgus@ebglaw.com or via postal mail to Epstein Becker &
Green, Attn: Marketing Department, 250 Park Avenue, New York, NY 10177. Be sure to include
your email address if submitting your request via postal mail. -EBG1

Keep your kids safer online with Windows Live Family Safety. Help protect your kids.

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain
information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or
copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or
agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-
mail in error, please call the Help Desk of Epstein Becker & Green at 212-351-4701 and destroy the original
message and all copies.

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to ebgus@ebglaw.com or via postal mail to Epstein Becker & Green, Attn: Marketing Department, 250 Park Avenue, New York, NY 10177. Be sure to include your email address if submitting your request via postal mail. - EBG1

Enjoy 5 GB of free, password-protected online storage. Get Windows Live SkyDrive.

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call the Help Desk of Epstein Becker & Green at 212-351-4701 and destroy the original message and all copies.

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to ebgus@ebglaw.com or via postal mail to Epstein Becker & Green, Attn: Marketing Department, 250 Park Avenue, New York, NY 10177. Be sure to include your email address if submitting your request via postal mail. -EBG1

Instantly invite friends from Facebook and other social networks to join you on Windows Live™ Messenger. Invite friends now!

**EXHIBIT 8**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X

DEMETRIUS WRIGHT,
LUIS VELEZ,

                                       Plaintiffs, on

on behalf of themselves and all others similarly situated,

Civil Action No.: 08CV3172
(DC)(ECF)

                -against-

                       **Second
Amended Complaint**

**Jury Trial Demanded**

BRAE BURN COUNTRY CLUB, INC.,
STEVEN VANDO, individually and as General Manager
of Brae Burn Country Club,
MARIA CONTE, individually and as Controller
of Brae Burn Country Club,

                              Defendants.
-------------------------------------------------X

Plaintiffs Demetrius Wright and Luis Velez, by their attorney, David C. Wims, amend the

Complaint by leave of Court, and allege, on behalf of themselves and all others similarly

situated who opt into this action, as follows:

## NATURE OF ACTION

1. This is a challenge to several of Defendant's unlawful employment practices,

including: (i) failure to pay overtime; (ii) failure to pay for all hours worked; (iii)

involuntary servitude; and (iv) violations of Racketeering Influenced Corrupt

Organizations ("RICO), 18 U.S.C. §§ 1961 *et seq.*

2. Pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), Plaintiffs

allege that they are: (i) entitled to compensation for hours worked but unpaid, (ii) entitled

to overtime compensation for hours worked beyond forty per week; and (iii) entitled to

liquidated damages equal to their unpaid wages under the FLSA.

1

3. Pursuant to the New York Labor Law, Articles 6 and 19, Plaintiffs allege that they are: (i) entitled to compensation for hours worked but unpaid, (ii) entitled to overtime compensation for hours worked beyond forty per week; (iii) entitled to call-in and spread of hours pay; and, (iv) entitled to liquidated damages equal to twenty-five percent of their unpaid wages under the New York Labor Law.

4. Pursuant to the Thirteenth Amendment to the Constitution of the United States, U.S. Const. Amend. XIII, Plaintiffs allege that they are: (i) entitled to compensatory damages, (ii) entitled to punitive damages, and (iii) entitled to attorney's fees and costs.

5. Pursuant to RICO, Plaintiffs allege that they are: (i) entitled to treble damages; and (ii) entitled to attorney's fees and costs.

6. Pursuant to 29 U.S.C. § 216(b), Plaintiffs bring their FLSA claim as a collective action on behalf of themselves and all other similarly situated employees of Defendant who elect to opt into this action.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiffs' Labor Law claims pursuant to 28 U.S.C. § 1367. In addition, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216 (b).

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a), as the events giving rise to the claim occurred therein.

## FACTUAL ALLEGATIONS

*The Parties*

2

9. Plaintiff Demetrius Wright is an adult, black male residing in the State of New York, County of Westchester.

10. Plaintiff Luis Velez is an adult, Hispanic male residing in the State of New York, County of Westchester.

11. Defendant Brae Burn Country Club, Inc. is a domestic not-for-profit corporation doing business within the State of New York, County of Westchester.

12. Defendant owns and/or operates the real property located at Brae Burn Drive, Purchase, NY 10577.

13. Defendants Steven Vando and Maria Conte at all times herein relevant were and are the General Manager and Controller, respectively, of Defendant Brae Burn Country Club, Inc.

*Statutory Coverage*

14. Plaintiff Demetrius Wright was employed by Defendant Brae Burn from April 2006 to April 2007 as a laundry attendant.

15. Plaintiff Luis Velez was employed by Defendant Brae Burn from April 2006 to December 2006 as a maintenance worker.

16. During their respective tenures, Plaintiffs were employed by Defendant Brae Burn within the meaning of §§ 2, 190, and 651 of the New York Labor Law.

17. During their respective tenures, Plaintiffs were employed by Defendant Brae Burn within the meaning of 29 U.S.C. § 203 of the FLSA.

18. In performing their duties, Plaintiffs were engaged in commerce within the meaning of the FLSA.

19. In performing their duties, Plaintiffs used goods and products that had been moved or

3

produced in interstate commerce.

20. From the commencement of Plaintiffs' employment and before, to the filing of this Complaint, Defendant Brae Burn has been an enterprise engaged in commerce within the meaning of the FLSA.

21. From the commencement of Plaintiffs' employment and before, to the filing of this Complaint, Defendant Brae Burn has used goods and products that have been moved or produced in interstate commerce.

*Plaintiffs' Employment*

22. Throughout their tenures, Plaintiffs were full-time employees of Defendant Brae Burn subject to a collective bargaining agreement.

23. Throughout the Covered Period, Defendants scheduled Plaintiffs to work (barring vacation days, sick days, or other days off from his schedule) five, twelve-hour shifts per week, with additional hours and days as needed by Defendants.

24. Plaintiffs' work hours for Defendants frequently totaled more than ten hours per day and forty hours per week, sometimes spanning seven days and including split shifts and call-in work; and often included labor performed before punching in and after punching out, or not otherwise recorded or accounted for by Defendants.

25. Each week, after submission of completed time cards by Plaintiffs, Defendants Vando, Conte and/or their designees would review Plaintiffs' time cards, and "edit" them in a scheme to defraud the Plaintiffs and other employees, *inter alia*.

26. The "editing" that occurred would substitute a 8:00 pm clock out for a 10:00 pm clock out, for example, always resulting in labor performed by Plaintiffs for which they were not paid.

4

27. The "editing" occurred almost every week throughout the periods of employment of Plaintiffs, and Defendants actually crossed out validly punched times of Plaintiffs to write in their own entries, and then based Plaintiffs' pay on the substituted values, thereby defrauding Plaintiffs of some of their rightfully earned wages.

28. Defendants' fraudulent scheme was made possible by virtue of the authority and positions of Defendants Vando and Conte at Defendant Brae Burn Country Club in its capacity as employer of Plaintiffs and others.

29. Defendants facilitated their scheme to defraud by use of the mails and wires in that the timecards and pay stubs of Plaintiffs were transmitted, executed, confirmed, sent and/or received by way of telephone calls, faxes and the mails.

30. Defendants never notified Plaintiffs that their time cards were being "edited," and concealed the same so that Plaintiffs would have no recourse.

31. Upon information and belief, the proceeds of the scheme were retained by and beneficial to Defendant Brae Burn Country Club.

32. Defendants Vando and Conte were personally involved in the scheme to defraud and also delegated some of the acts to their subordinates.

33. As consideration for employment, Defendants paid Plaintiffs: a) cash wages, b) lodging with utility services, c) health insurance, d) two meals per day, and other forms of remuneration.

34. Plaintiffs' weekly wages from Defendants varied depending on the number of hours Defendants assigned them to work.

35. Defendants paid Plaintiffs overtime compensation the calculation of which did not include the value of the lodging, meals, utility services, etc., provided to Plaintiffs by Defendants.

36. Actual pay stubs and time cards issued by Defendants to Plaintiffs are attached to this complaint as Exhibit "A".

*Collective Action Allegations*

37. During the relevant time periods, Defendants employed other employees in the same and other job title(s) as Plaintiffs.

38. During the relevant time periods, Defendants subjected other employees than Plaintiffs to the same overtime pay policies outlined above.

39. Defendants subjected other employees than Plaintiffs to the same overtime pay policies outlined above even where those employees had different titles, responsibilities, shifts and work schedules than Plaintiffs.

40. Upon information and belief, Defendants continue to subject its employees to the same overtime pay policies it has applied to Plaintiffs, as outlined above.

## FIRST CLAIM FOR RELIEF

## FAIR LABOR STANDARDS ACT

41. Plaintiffs allege and incorporate by reference all of the above allegations.

42. Under the FLSA, Plaintiffs were entitled to payment for all hours worked and overtime compensation from Defendants of one and one-half (1.5) times their 'regular rate' of pay for hours worked beyond forty per week.

43. Under the FLSA, Plaintiffs' 'regular rate' of pay includes all remuneration for employment, whether in the form of wages, facilities or some other form, and whether

6

paid directly to Plaintiffs or to a third party.

44. By the above course of conduct, Defendants have violated the FLSA.

45. Defendants have violated the FLSA willfully.

46. Upon information and belief, Defendants' practices complained of herein were not approved in writing by the United States Department of Labor ("USDOL") or the New York Department of Labor ("NYDOL").

47. Upon information and belief, Defendants' practices complained of herein were not based on Defendants' (or any of its agents') review of any policy or publication of the USDOL or the NYDOL.

48. Upon information and belief, Defendants' practices complained of herein were not based upon any advice of counsel received by Defendants.

49. Due to Defendants' FLSA violations, Plaintiffs are entitled to recover their unpaid wages, overtime compensation, liquidated damages, reasonable attorneys' fees, and the costs of this action, pursuant to 29 U.S.C. § 216 (b).

50. Other employees similarly situated to Plaintiffs are entitled to the same relief that Plaintiffs seek under the FLSA.

## SECOND CLAIM FOR RELIEF

## NEW YORK LABOR LAW

51. Plaintiffs allege and incorporate by reference all of the above allegations.

52. Under the New York Labor Law, Plaintiffs were entitled to payment for all hours worked and overtime compensation of one and one-half (1.5) times their 'regular rate' of pay for hours worked beyond forty per week.

7

53. Under the New York Labor Law, Plaintiffs' 'regular rate' of pay includes all remuneration for employment, whether in the form of wages, facilities or some other form, and whether paid directly to Plaintiffs or to a third party.

54. By the above course of conduct, Defendants have violated the New York Labor Law.

55. Defendants have violated the New York Labor Law willfully.

56. Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover their unpaid wages, overtime compensation, liquidated damages, reasonable attorneys' fees, and the costs of this action, pursuant to New York Labor Law §§ 198, 663(1).

## THIRD CLAIM FOR RELIEF

## THIRTEENTH AMENDMENT TO THE U.S. CONSTITUTION

57. At all times herein relevant, Defendants' employment of Plaintiffs was subject to the Thirteenth Amendment to the U.S. Constitution, which forbids involuntary servitude, *inter alia.*

58. Pursuant thereto, Plaintiffs were entitled to compensation for labor at a rate not less than the controlling minimum wage.

59. By "editing" Plaintiffs' timecards and eliminating their hours, Defendants have subjected them to involuntary servitude and violated the Thirteenth Amendment to the U.S. Constitution, causing Plaintiffs damages.

60. Due to Defendants' violation of the same, Plaintiffs are entitled to recover their unpaid compensation, compensatory damages, punitive damages, attorney's fees and costs.

## FOURTH CLAIM FOR RELIEF

## RACKETEERING INFLUENCED CORRUPT ORGANIZATIONS

8

61. This Count arises under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

62. Defendant Brae Burn Country Club, Inc. is an enterprise within the meaning of 18 U.S.C. § 1961(4), which is engaged in, or the activities of which affect, interstate or foreign commerce. The fraudulent transactions detailed above were made by Defendants Vando and Conte in their capacity as officers of Brae Burn.

63. The fraudulent transactions set forth above represented a scheme and artifice to defraud Plaintiffs, which was facilitated by use of the United States Mail and wires, caused by Defendants, and resulting in mail fraud within the meaning of 18 U.S.C. § 1341.

64. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

65. Defendant's multiple fraudulent transactions as detailed above constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

66. Defendants Vando and Conte and their agents, associates, and representatives, have conducted, and have participated in the conduct of, the affairs of Brae Burn Country Club through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), (d).

67. As a direct and proximate result of these violations of 18 U.S.C. § 1962(c), Plaintiffs have suffered actual damages as a result of injury to their property in the amount of any unpaid wages.

68. Defendants Vando and Conte are liable to Plaintiffs for treble damages, together with all costs of this action plus reasonable attorney's fees, all as provided under 18 U.S.C. § 1964(c).

9

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

69. Award Plaintiffs the following unpaid wages:

a. unpaid wages under the FLSA;

b. unpaid wages under the New York Labor Law;

c. unpaid overtime compensation under the FLSA;

d. unpaid overtime compensation under the New York Labor Law; and

e. unpaid wages under the Thirteenth Amendment; and

70. Award Plaintiffs the following liquidated damages:

a. liquidated damages equal to unpaid compensation under the FLSA; and

b. liquidated damages equal to an additional twenty-five percent of unpaid compensation

under the New York Labor Law; and

71. Award Plaintiffs compensatory and punitive damages for the constitutional violation;

72. Award Plaintiffs treble damages for all injury sustained by reason of injury to

property that occurred as a result of Defendants' violations of RICO;

73. Award Plaintiffs pre-judgment interest; and

74. Award Plaintiffs reasonable attorney's fees as well as the costs of this action; and

75. Award all similarly situated employees who opt into this action the same relief that

Plaintiffs are awarded under the FLSA; and

76. Award such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

77. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a

trial by jury on all questions of fact raised by the Complaint.

Dated: 07/14/08

Brooklyn, NY

LAW OFFICE OF DAVID WIMS
David C. Wims, Esq. (DW-6964)
*Attorney for Plaintiff*
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550

EXHIBIT 9

# EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW
250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
212.351.4500
FAX: 212.661.0989
EBGLAW.COM

PETER M. PANKEN
TEL: 212 351.4840
FAX: 212 878.8630
PPANKEN@EBGLAW.COM

June 18, 2008

## VIA FIRST CLASS AND ELECTRONIC MAIL (to davidwims@hotmail.com)

David Wims, Esq.
Law Office of David Wims
1430 Pitkin Avenue
2nd Floor
Brooklyn, NY 11233

Re:  Demetrius Wright v. Brae Burn Country Club

Dear Mr. Wims:

I have reviewed your calculations of the time paid to Mr. Wright and Mr. Velez ( although Velez is not yet a party to the suit). Your calculations are wrong since neither punched out for their meal periods or their one hour break during the day. When they worked during the time the communal meals were available for the staff who were working at those periods (11:00 AM – 12 Noon and 4:00 to 5:00 PM), they were given a full half-hour break. In addition, they were given a one hour break during the afternoons when they worked overtime which they did not punch out for.

As I told you, any claims for mistakes in pay were subject to arbitration under the collective bargaining agreement covering these two gentlemen. As to Mr. Wright, all of his claims were covered by the release he signed in exchange for $7500.

I have previously sent to you calculations for the values of the food and lodging for Wright which are far less than the Rule 68 offer we previously made. Mr. Velez's claim for meals only would be less than $20, again far less than we have offered.

As to the collective action claims, as I previously informed you, the United State Department of Labor Wage Hour Division has audited this claim and my client has drawn checks to everyone the Wage Hour Division indicated might be owed additional compensation, so there cannot be a possible FLSA collective action. As to the State

ATLANTA · CHICAGO · DALLAS · HOUSTON · LOS ANGELES · MIAMI
NEWARK · NEW YORK · SAN FRANCISCO · STAMFORD · WASHINGTON, D.C.

EPSTEIN BECKER GREEN WICKLIFF & HALL, P.C. IN TEXAS ONLY

David Wims, Esq.
June 18, 2008
Page 2

claim, you were copied on an opinion letter from the appropriate state agency indicating that under New York State Law there is no requirement to include the cost or value of meals and lodging in the regular rate for purposes of calculating overtime compensation.

You have indicated that you will be seeking to once again amend your complaint which can only be done by motion and indicated that you would be seeking a pre-motion conference with our Judge. Please let me know what you intend to do, especially in view of the above facts. If you are allowed to amend your complaint once again, there would seem to be no warrant to answer or move against the first amended complaint.

Very truly yours,

Peter M. Panken

PMP:pa

David Wims, Esq.
June 18, 2008
Page 3


bcc:   Mr. Steven Vando

**EXHIBIT 10**

A G R E E M E N T

between the

Local 32BJ, SEIU

and the

FEDERATION OF COUNTRY CLUBS,

For and on Behalf of its Member Clubs,

Effective February 1, 2005

TABLE OF CONTENTS

ARTICLE 1 - RECOGNITION ........................................................................... 1
ARTICLE 2 - UNION SECURITY ..................................................................... 1
ARTICLE 3 - CHECKOFF ................................................................................ 2
ARTICLE 4 - DISCIPLINE AND DISCRIMINATION ................................... 2
ARTICLE 5 - WORKWEEK AND OVERTIME ............................................. 3
ARTICLE 6 - LAYOFFS .................................................................................. 3
ARTICLE 7 - VACATIONS .............................................................................. 4
ARTICLE 8 - HOLIDAYS ................................................................................ 4
ARTICLE 9 - SICK LEAVE ............................................................................. 5
ARTICLE 10 - PERSONAL LEAVE ................................................................ 5
ARTICLE 11 - BEREAVEMENT PAY ............................................................ 6
ARTICLE 12 - SEVERANCE PAY .................................................................. 6
ARTICLE 13 - INSURANCE AND WELFARE ............................................... 6
ARTICLE 14 - PENSION PLAN ...................................................................... 9
ARTICLE 15 - HIRING HALL ......................................................................... 10
ARTICLE 16 - SUMMER HELP ...................................................................... 11
ARTICLE 17 - CHANGE IN CLASSIFICATION ........................................... 11
ARTICLE 18 - STORAGE ................................................................................ 11
ARTICLE 19 - CONSCRIPTION ..................................................................... 11
ARTICLE 20 - CALL IN PAY .......................................................................... 12
ARTICLE 21 - WAGES .................................................................................... 12
ARTICLE 22 - UNIFORMS ............................................................................. 13
ARTICLE 23 - MEALS ..................................................................................... 13
ARTICLE 24 - SHOP CHAIRMAN ................................................................. 13
ARTICLE 25 - UNION VISITATION .............................................................. 13
ARTICLE 26 - PROBATIONARY EMPLOYEES ........................................... 13
ARTICLE 27 - GRIEVANCE AND ARBITRATION ...................................... 14
ARTICLE 28 - INDIVIDUAL AGREEMENTS .............................................. 15
ARTICLE 29 - MOST FAVORED NATION .................................................... 15
ARTICLE 30 - NO STRIKE, NO LOCKOUT .................................................. 15
ARTICLE 31 - MANAGEMENT RIGHTS ...................................................... 15
ARTICLE 32 - GENERAL CONSTRUCTION ................................................ 16
ARTICLE 33 - SALE OR TRANSFER ............................................................ 16
ARTICLE 34 - SENIORITY ............................................................................. 17
ARTICLE 35 - JURY DUTY ............................................................................ 18
ARTICLE 36 - ELECTRONIC EQUIPMENT ................................................. 18
ARTICLE 37 - SUCCESSORS AND ASSIGNS .............................................. 18
ARTICLE 38 - TERMINATION ....................................................................... 18
APPENDIX ....................................................................................................... 19

AGREEMENT made and entered into as of this 18th day of November, 2005 by and between the LOCAL 32BJ, SEIU ("Union") and the FEDERATION OF COUNTRY CLUBS ("Federation") for and on behalf of its member Clubs which are listed in the Appendix (collectively, the "Agreement").

## WITNESSETH:

### ARTICLE 1 - RECOGNITION

Section 1.1     The Club recognizes the Union as the sole bargaining agent for the purpose of collective bargaining in respect to rate of pay, wages, hours of employment and other conditions of employment for all employees in the categories set forth in Section 21.1 hereof, excluding all supervisory employees with authority to hire, promote, discharge, discipline or otherwise effect changes in the status of employees or effectively recommend such action.

Section 1.2     Unless otherwise specifically stated, whenever the term "employee" is used in this Agreement, the term shall refer only to an employee or employees covered by this Agreement and to no other employee or employees of the Club.

### ARTICLE 2 - UNION SECURITY

Section 2.1     It shall be a condition of employment that all employees covered by this Agreement who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing and those who are not members of the Union on the effective date of this Agreement, shall on the thirtieth (30th) day following the effective date of this Agreement, become and remain members in good standing in the Union. It shall also be a condition of employment that all employees covered by this Agreement and hired on or after its effective date shall on the thirtieth (30th) day following the beginning of such employment become and remain members in good standing in the Union.

Section 2.2     Each employee covered by the terms of this Agreement, if not already a member of the Union, shall within thirty (30) days after the commencement of employment, or the execution date of this Agreement, whichever is later, make application to become a member of the Union, and as a condition of continued employment tender payment of such dues and initiation fees as may be required uniformly by the Union.

Section 2.3     Should any employee fail to tender payment in accordance with this Article, the Union shall notify the Club after such failure and within twenty-four (24) hours of receipt by the Club of such notification, the employee shall be discharged for failure to become or remain a member in good standing.

Section 2.4     For purposes of this Agreement, the term "employee" shall not include Student/Intern/Apprentice Superintendent or summer help as defined in Article 16 of this Agreement.

Section 2.5    The Club shall forward in writing to the Union after completion of their probationary period, the name, residence address, social security number, job classification and date of hire of each new employee.

Section 2.6    The Club shall inform new employees of the existence of this Article 2 and shall make available to the employee the appropriate forms to become a member of the Union, as supplied by the Union.

## ARTICLE 3 - CHECKOFF

Section 3.1    It is mutually agreed that a Club, when authorized in writing as provided by law, will withhold from wages of employees Union dues, initiation fees and assessments which the Union shall certify to the Club in writing are uniformly required as a condition of acquiring and retaining membership in the Union, provided that the employee shall have furnished the Club with a dated, effective, written deduction authorization in a form authorized by law which is not irrevocable for a period of more than (1) year or beyond the termination date of this Agreement, whichever occurs sooner.

Section 3.2    Each Club agrees to notify the Union each month of terminations and to furnish the date of hire along with the employee's address for all newly hired employees with each checkoff.

Section 3.3    Each Club will notify the Union promptly upon receipt of any revocation of any authorization submitted to it pursuant to this Article.

Section 3.4    The Club will inform new employees of the existence of this Article 3 and will make available such authorization forms as are supplied by the Union.

## ARTICLE 4 - DISCIPLINE AND DISCRIMINATION

Section 4.1    No employee who has completed his/her probationary period shall be discharged, laid-off, suspended, dispossessed or evicted without just cause.

Section 4.2    The Club shall notify the Union in writing immediately upon such discharge, layoff, suspension, eviction or any other manner of termination of employment by action of the Club, setting forth the reason therefor.

Section 4.3    In the event of a claim being made by the Union that an employee has been unjustly discharged, laid-off, suspended or evicted, such claim shall be filed in writing, by the Union with the Club, within fifteen (15) working days following such discharge, layoff, suspension or eviction. If the Union fails to file such claim within fifteen (15) working days the Union will waive the right to file a grievance concerning such discharge, layoff, suspension or eviction via the Grievance and Arbitration procedure contained in Article 27 of this Agreement.

Section 4.4    No employee shall be discriminated against or deprived of employment because of race, color, creed, sex, national origin, ancestry, age or because of lawful activities for the Union.

## ARTICLE 5 - WORKWEEK AND OVERTIME

Section 5.1    The normal workweek for all full-time employees shall be scheduled over five (5) consecutive days of eight (8) consecutive hours each day plus one (1) additional nonpaid hour for an eating period, as close to the middle of the working day as shall be practicable. Without limiting the Club's authority and rights under Article 31 hereof, the Club may alter the schedule when work is not available because of weather, Act of God or other cause beyond the control of the Club.

Section 5.2    For outside employees who had at least three (3) years seniority as of February 1, 1984, the workweek shall be forty (40) hours, to begin on Monday and end on Friday.

1.    All work performed by such employees on Saturday shall be paid at the rate of time-and-one-half (1-1/2) times the regular rate of pay, with a guaranty that any Grounds Foreperson, Groundskeeper or Mechanic called to work on Saturday shall be guaranteed at least three (3) hours of work.

2.    All work performed by such employees on Sunday shall be at two (2) times the regular hourly rate of pay, with a guaranty that any Grounds Foreperson, Groundskeeper or Mechanic called to work on Sunday shall be guaranteed at least three (3) hours of work.

Section 5.3    For all employees not covered by Section 5.2, all hours worked on the sixth (6th) day in a regular workweek shall be paid at the rate of one-and-one-half (1-1/2) times the regular rate of pay. All hours worked on the seventh (7th) day in a regular workweek shall be paid at two (2) times the regular rate of pay.

Section 5.4    Hours worked in excess of eight (8) hours in any one day or hours worked in excess of forty (40) hours in a regular workweek shall be paid for at the rate of time-and-one-half the regular rate of pay.

Section 5.5    Working hours of employees shall not be changed for the purpose of avoiding the payment of overtime rates. All hours of a holiday for which an employee does not work but is paid shall count as time worked for calculating overtime.

## ARTICLE 6 - LAYOFFS

Section 6.1    In the event of a layoff or recall, the principal of seniority on a classification basis shall be followed in determining who shall be laid off or recalled. The ability of the employee to perform a given task within the classification may be considered by a Club for the purpose of varying the classification seniority rule. Each Club agrees that it will not unreasonably vary such rule.

## ARTICLE 7 - VACATIONS

Section 7.1    All full-time employees shall receive vacation with pay, at a time to be scheduled in accordance with Section 7.2, as follows:

1.    All employees employed for one (1) year shall receive one (1) week vacation with pay.

2.    All employees employed for two (2) years shall receive two (2) weeks vacation with pay.

3.    All employees employed for five (5) years shall receive three (3) weeks vacation with pay.

4.    All employees employed for fourteen (14) years shall receive four (4) weeks vacation with pay.

5.    For the purposes of subsections (1)-(4) above only, years of service shall be measured by the seniority of the employee commencing with the most recent date of hire.

Section 7.2    Each Club shall designate a period of at least four (4) months within which employees shall be entitled to schedule vacations. A Club shall make every effort to honor employees' requests. However, a Club reserves the right to limit vacations to one (1) employee per week in each job classification. In the event that more than one (1) employee requests vacation in the same week, seniority shall control.

Section 7.3    Employees who have been on the payroll more than nine months but less than one year who are laid off at the end of a season shall be paid pro rata vacation pay (number of months worked divided by twelve multiplied by one week's pay) if and when they are recalled from layoff the following season. Employees who have been on the payroll for at least one year and who are laid off between seasons shall receive pro rata vacation pay at the time of layoff. Notwithstanding the foregoing, vacation shall not be prorated for any employee with 5 years or more continuous service at the Club.

## ARTICLE 8 - HOLIDAYS

Section 8.1    Employees shall receive the following recognized holidays with pay: New Year's Day, Lincoln's Birthday, Washington's Birthday, Good Friday, Memorial Day, Fourth of July, Labor Day, Columbus Day, Election Day, Veteran's Day, Thanksgiving Day, · Christmas Day and the employee's birthday. Employees are eligible for holidays immediately after completion of their probationary period.

Section 8.2    An employee must work both the scheduled day before and scheduled day after a recognized holiday, in order to be entitled to pay for the holiday unless the employee is sick and presents satisfactory medical proof of illness pursuant to Section 9.3 of this Agreement.

Section 8.3    An employee who is required to work on a recognized holiday will receive an additional day's pay. In the event that any of the recognized holidays fall on an employee's day off or during an employee's vacation, the employee shall receive an additional day's pay. Each Club guarantees payment for the recognized holidays, subject to the provisions of Section 8.2 of this Agreement.

Section 8.4    Employees who work for at least eight (8) months of the calendar year shall be entitled to a birthday holiday. If the birthday holiday is not taken prior to layoff between seasons, it shall be paid at the time the employee returns from layoff.

## ARTICLE 9 - SICK LEAVE

Section 9.1    Employees who have completed twelve (12) months of work at the Club (excluding any layoff period) shall be allowed five (5) days sick leave which may be taken on or before the next occurring December 31, and thereafter, will be allowed five (5) days sick leave each succeeding calendar year.

Section 9.2    A Club may in its sole discretion require any employee to present satisfactory proof of illness as a condition of payment for such leave.

Section 9.3    A Club shall employ a substitute for such sick employee during such sickness or disability.

Section 9.4    Employees who are laid off between seasons by a Club shall receive payment for their accrued but unpaid sick leave at the time they are laid off. Employees who are not laid off after the season shall receive payment for their accrued but unused sick leave on or before December 15 of the year in which the paid sick leave accrued.

Section 9.5    Whenever an employee receives sick leave pay under this Article 9, a Club shall be reimbursed, as provided by law, out of any disability benefits to which said employee is entitled.

## ARTICLE 10 - PERSONAL LEAVE

Section 10.1    Employees who have completed twelve months of work at the Club (excluding any layoff period) shall be allowed two (2) days of personal leave per year. Employees requesting personal leave must provide the Club with a minimum of three (3) days advance notice before taking such leave. Such requests will be granted at the sole discretion of the Club but may not be unreasonably denied.

Section 10.2    Employees who are laid off between seasons by a Club shall receive payment for their accrued but unpaid personal leave at the time they are laid off. Employees who are not laid off after the season shall receive payment for their accrued but unused personal leave on or before December 15 of the year in which the paid personal leave accrued.

## ARTICLE 11 - BEREAVEMENT PAY

Section 11.1  A Club shall grant a paid leave of absence at the regular employee's straight time hourly rate, to a regular employee, due to death in his or her immediate family for a period of up to three (3) days if the funeral is to be held in New York, New Jersey, Pennsylvania or Connecticut, four (4) days if the funeral is to be held in any other state, territory, commonwealth or district of the United States or five (5) days if the funeral is held outside of the United States.  Payment shall only be made for those days that fall upon a regularly scheduled workday.  The employee must provide proof of travel as well as proof of death in order to receive this paid leave of absence.  For the purpose of this Agreement, death in the immediate family shall be deemed to mean death of a father, mother, husband or wife, brother or sister, or child of the employee.

## ARTICLE 12 - SEVERANCE PAY

Section 12.1  An employee with a minimum of twenty (20) consecutive years of service with the same Club who is terminated by the Club for any reason other than for just cause, shall receive accrued, unused, vacation and five (5) weeks severance pay.  This provision will not apply to employees who resign from their employment.

## ARTICLE 13 - INSURANCE AND WELFARE

Section 13.1  Each Club hereby agrees that for the duration of this Agreement, it shall pay monthly on or before the tenth (10th) day of each month commencing the tenth (l0th) day of February, 1993, to the Service Employees Welfare Fund ("Welfare Fund"), the amounts set forth below, to be used by the said Welfare Fund for the sole benefit of the said employees employed by a Club to provide group insurance to cover such items of insurable benefits which may, or can be issued by, and obtained from insurance companies and insurance groups, and to cover such other forms of health, hospitalization, surgical and other benefits as the Welfare Fund may and can provide.

Section 13.2  With respect to all covered full-time employees, the amount of required contributions shall be as follows:

1.  Effective February 1, 2005 and until January 31, 2006, the amount of each Club's payment shall be at the rate of Four Hundred Dollars ($400) per month for each covered month of employment.

2.  Effective February 1, 2006 and until January 30, 2007, the amount of each Club's payment shall be at the rate of Five Hundred and Forty Six Dollars ($546.00) per month for each covered month of employment.

3.  Effectivee February 1, 2007 and for the duration of this contract the amount of each Club's payment shall be at the rate of Six Hundred and Seven Dollars ($607.00) per month for each covered month of employment.

Section 13.3    Each Club shall pay the amounts specified in Section 13.2 for its full-time employees as follows:

1.    For each present or newly hired employee employed less than seventeen (17) weeks per year, no payment shall be made to said Welfare Fund.

2.    For each present employee employed at least seventeen (17) weeks, the payment shall be made for each week of employment after such initial seventeen (17) week period.

3.    For each full-time employee who was hired by the Club on or before February 1, 1984 and has been on the payroll of the Club for five (5) consecutive years or more as a full time employee at the time of the seasonal layoff, the Club will make Welfare Fund contributions on that employee's behalf during the seasonal layoff if the employee was employed by the Club twenty-six (26) weeks or more in the year before seasonal layoff.

4.    For each full-time employee who was hired by the Club after February 1, 1984 and has been on the payroll of the Club for five (5) consecutive years or more as a full time employee at the time of the seasonal layoff, the Club will make Welfare Fund contributions on that employee's behalf during the seasonal layoff if the employee was employed by the Club thirty-five (35) weeks or more in the year before seasonal layoff.

5.    For each full time employee who was on the Club's payroll for less than five (5) consecutive years as a full time employee and was on the payroll of the Club for thirty-five (35) weeks or more in the year prior to the seasonal layoff the employee shall be responsible for continuing the contributions to the Welfare Fund pursuant to COBRA. The Club, however, will reimburse the employee the amount of the employee's paid COBRA payments to the Fund, when and if they report to work when recalled by the Club for the next season.

6.    For each newly hired employee employed at least seventeen (17) weeks but less than twenty-six (26) weeks per year, the payment shall be at a rate sufficient to provide coverage for that employee only.

7.    No contributions shall be required for Summer Help or Student/Intern/Apprentice Superintendents.

Section 13.4   It is understood that the funds will be held and managed under the terms and provisions of an Agreement and Declaration of Trust now existing.  It is further understood and agreed that the Club shall be under no obligation as to the application of the monies paid to the Welfare Fund for the purposes and uses above mentioned.

Section 13.5   Each Club agrees to make available to the Welfare Fund, such records of employees hired, classification of employees, name, social security numbers and accounts of wages paid as the Welfare Fund may require in connection with the sound and efficient operation of the Welfare Fund, or that may be required by insurance companies or groups covering the employees.

Section 13.6   In the event that a Club fails to make the above payments when due, then upon the determination of the amount due by an audit of the Club's books and records and upon notification of the Club by Certified Mail of the amount due, the Club agrees to pay in addition to the principal sum determined by the audit, an amount equal to ten percent (10%) of the delinquency, said ten percent (10%) to be considered as liquidated damages.  In addition, the Club agrees to pay interest at the annual rate of six percent (6%) of the amounts due computed from the date when they became due.  The Club further agrees to be liable for the cost and expense of the Welfare Fund's legal counsel in the process of commencing and prosecuting or participating in proceedings at law or equity, including insolvency proceedings, in a sum not to exceed $1,000.00, or five percent (5%) of the amount found to be due, whichever sum is greater. The determination of the Trustees as to the said liquidated damages to be assessed as hereinabove provided shall be final, binding, and conclusive, and the said liquidated damages shall be collectible and enforceable in the same manner as in the case of Club contributions and shall be considered a part thereof.

Section 13.7   For the duration of this Agreement, each Club shall pay the full cost of providing coverage for its employees under the New York or Connecticut Disability Benefits Law whichever is applicable.

Section 13.8   Each Club shall have the right, in its sole discretion, to offer its own health insurance plan to any of its employees.  If the Club provides a health insurance plan for an employee equal to or better than the Welfare Fund, the Club shall not be required to make any contributions to the Welfare Fund on behalf of such employee.  If the employee elects in writing to be covered by the Welfare Fund, the Club shall recommence contributions and may terminate coverage under the Club's plan.

Section 13.9   The Club shall reimburse the Welfare Fund up to $60 per year per employee   employed   as   a   Ranger,   Grounds   Foreperson,   Groundskeeper   or Outside/Groundskeeper Apprentice who chooses to and receives a vaccination against Lyme disease through a Welfare Plan administered by the Welfare Fund.

Section 13.10  The Union, after meetings with and recommendations from actuaries, Fund attorneys and Trustees may reallocate contributions, or a portion thereof, between the Welfare and Pension Funds upon the consent from the Federation of Country Clubs. Consent by the Federation of Country Clubs shall not be unreasonably withheld.  This allocation

is limited to (1) one time in any twelve (12) month period and the benefits provided to the Clubs' employees under either Fund may not be diminished as a result of the reallocation.

### Section 13.11

1. Each Club must notify the Welfare Fund in writing if an employee is laid off, discharged or resigns. The notification must be sent via certified mail or Federal Express within 7 days of the layoff, discharge or resignation.

2. The Welfare Fund shall send confirmation of receipt of the Club's notice by certified mail within 7 calendar days of receipt.

## ARTICLE 14 - PENSION PLAN

Section 14.1    The Club hereby agrees that for the duration of this Agreement, it shall pay monthly on or before the tenth (10th) day of each month commencing the tenth (10th) day of February, 1993 to the Service Employees Pension Fund ("Pension Fund") the amount set forth below, to be used by the Pension Fund to be applied solely to the payment of benefits, or the administration of the Pension Fund, Plan and System.

1. Effective February 1, 2005 and until November 30, 2005 the amount of each Club's payment shall be at the rate of One Hundred and Sixty Dollars ($160.00) per month for each covered month of employment, as set forth in Section 14.2.

2. Effective December 1, 2005 and until January 31, 2006, the amount of each Club's payment shall be at the rate of One Hundred and Sixty Five Dollars ($165.00) per month for each covered month of employment, as set forth in Section 14.2.

3. Effective February 1, 2006 and until January 30, 2007, the amount of each Club's payment shall be at the rate of One Hundred and Seventy Dollars ($170.00) per month for each covered month of employment, as set forth in Section 14.2.

4. Effective January 31, 2007 and for the duration of the Agreement, the amount of each Club's payment shall be at the rate of One Hundred and Seventy Five Dollars ($175.00) per month for each covered month of employment, as set forth in Section 14.2.

Section 14.2    The Club shall pay to the Pension Fund the amounts specified in Section 14.1 for its full-time employees as follows:

1.  For each employee employed less than seventeen (17) weeks per year, no payment shall be made to said Pension Fund.

2.  For each employee employed between seventeen (17) weeks and less than thirty-five (35) weeks per year, the payment shall be made for each month of employment after such initial seventeen (17) week period. Excluding seasonal layoff, no contributions shall be made in any month in which an employee's employment is terminated if that employee did not work at least fifteen (15) calendar days in that month.

3.  For each employee on the payroll of the Club on February 1, 1984 and employed twenty-six (26) weeks or more per year, the amount specified shall be paid for each month of said calendar year. For each employee hired after February 1, 1984 and employed thirty-five (35) weeks or more per year, the amount specified shall be paid for each month of said calendar year. Excluding seasonal layoff, no contributions shall be made in any month in which an employee's employment is terminated if that employee did not work at least fifteen (15) calendar days in that month.

Section 14.3   No contributions shall be required for Student/Intern/Apprentice Superintendent or Summer Help.

Section 14.4   In the event that any employee fails to return at the beginning of the season, a Club may discontinue payments to the Pension Fund for such employee and shall be credited for all payments made during the non-working period of such non-returning employee.

Section 14.5   The Union, after meetings with and recommendations from actuaries, Fund attorneys and Trustees, may reallocate contributions, or a portion thereof, between the Welfare and Pension Funds upon the consent from the Federation of Country Clubs. Consent by the Federation of Country Clubs shall not be unreasonably withheld. This allocation is limited to one (1) time in any twelve (12) month period and the benefits provided to the Clubs' employees under either Fund may not be diminished as a result of this reallocation.

## ARTICLE 15 - HIRING HALL

Section 15.1   In the event additional employees are required, a Club shall notify the Union and the Union shall supply such additional help as shall or may be available.

Section 15.2   If the Union for any reason is unable to supply such additional help within forty-eight (48) hours, a Club may hire through any other source.

Section 15.3    The Club, in its sole discretion, may reject any applicant or applicants referred by the Union.

## ARTICLE 16 - SUMMER HELP

Section 16.1    Summer Help shall be defined as those employees hired for a period between April 1 and October 31.

Section 16.2    Summer Help shall not be required to become Union members, but shall be required to pay a fee to the Union equivalent to Union dues at a rate prescribed by the Union. The Club shall not be required to make contributions to the Welfare or Pension Funds for Summer Help and such employees shall not be entitled to holiday pay, vacation, sick leave or seniority.

Section 16.3    Effective after April 1, 2006, Summer Help will be paid at least the following rates:

(a) Inside employees: The applicable minimum wage.

(b) Outside employees: The applicable minimum wage plus forty cents ($.40) per hour

Section 16.4    Within 7 days of hire, the Club will notify the Funds of employment of an individual who is Summer Help. Each individual hired as Summer Help shall be asked to sign a waiver of any and all rights to participate in any plan administered by the Funds.

Section 16.5    After April 1, 2007, Summer Help who have been employed for five consecutive summers working at least 28 weeks each summer shall be reclassified as regular employees starting with their next year of employment..

## ARTICLE 17 - CHANGE IN CLASSIFICATION

Section 17.1    Any employee who is assigned to another classification for which there is a higher wage than for his/her own classification, shall receive the higher wage for the new classification after the employee remains in the new classification for at least one (1) full workweek.

## ARTICLE 18 - STORAGE

Section 18.1    Each Club shall provide a safe place for employees to store their belongings.

## ARTICLE 19 - CONSCRIPTION

Section 19.1    The parties agree to abide by the provisions of the Veterans Reemployment Rights Act.

## ARTICLE 20 - CALL IN PAY

Section 20.1    Employees who are requested or permitted to report for work on any day during their scheduled workweek will receive at least eight (8) hours work or be paid therefor, provided that the employee remains available for such work.    Without limiting the Club's authority and rights under Article 31 hereof, the Club may alter the scheduled work week when work is not available because of weather, Act of God or other cause beyond the control of the Club.

## ARTICLE 21 - WAGES

Section 21.1    For the duration of this Agreement, the following minimum hourly wage rates shall prevail:

| Title | Inside Help | |
|---|---|---|
| Cleaner/Utility | $6.50 | |
| Security | 6.00 | |
| Head Locker Attendant | 6.00 (tip) | |
| | 7.00 (non-tip) | |
| Asst. Locker Attendant | 5.50 (tip) | |
| | 6.00 (non-tip) | |
| Pool Attendant | 5.50 | |
| Car and golf Attendant | 5.00 (tip) | |
| | 6.00 (non-tip) | |
| | | |
| Outside Help | | |
| | | |
| Mechanics | 9.50 | |
| Ranger | 6.50 | |
| Golf Cart Mechanic | 8.00 | |
| Grounds Foreperson | 9.00 | |
| Groundskeeper | 8.50 | |
| | | |
| Others | | |
| | | |
| Outside/GroundsKeeper Apprentices | 5.50 | 0-4 |
| | 6.00 | 5-8 months |
| | 6.50 | 9-12 months |
| | 7.00 | 13-18 months |
| | Applicable wage rate - 18+ months | |

Section 21.2   All present employees shall receive the following wage increases, or the applicable hourly rate set forth in Section 21.1, whichever is greater, but not both:

| Effective | February 1, 2005 | February 1, 2006 | February 1, 2007 |
|---|---|---|---|
| Mechanic/Other Outside Help | $.50 | $.45 | $.40 |
| Inside Help (Non-Gratuity) | .45 | .40 | .40 |
| Inside Help (Tipped) | .25 | .25 | .25 |

## ARTICLE 22 - UNIFORMS

Section 22.1   Each Club agrees that whenever it requires employees to wear special uniforms, such uniforms shall be supplied and laundered or cleaned at the expense of the Club.

Section 22.2   The club agrees to provide outside employees with one set of rain gear including a jacket, pants and rain boots for work in inclement weather at no cost to the employee.

## ARTICLE 23 - MEALS

Section 23.1   All employees covered by this Agreement to whom the Club has heretofore furnished meals shall continue to receive such meals during the term of this Agreement.

## ARTICLE 24 - SHOP CHAIRMAN

Section 24.1   The Union may appoint one of said employees as Shop Chairman for the INSIDE help and another employee as Shop Chairman for the OUTSIDE help.

## ARTICLE 25 - UNION VISITATION

Section 25.1   Official representatives of the Union shall be permitted to visit the premises at any reasonable time during the day or night when employees are working in and about the same, provided that such visits do not interfere with the work of the employees, the operations of a Club or the privileges of the members or their guests.

## ARTICLE 26 - PROBATIONARY EMPLOYEES

Section 26.1   For all purposes of this Agreement, the term "probationary employee" shall apply to, include and be limited to any employee who is hired as a regular employee but who has not completed sixty (60) working days at the Club measured from the employee's most recent date of hire.

Section 26.2    Probationary employees may be discharged at the sole discretion of the Club with no recourse to the grievance or arbitration provisions or any other provisions of this Agreement.

## ARTICLE 27 - GRIEVANCE AND ARBITRATION

Section 27.1    In the event of any dispute, difference or controversy between the Club and the Union under a provision of this Agreement, the following procedure shall be followed:

(a) With the exception of the disputes and/or controversies described in Section 4.3 of this Agreement, the party raising a claim in reference any other dispute, difference or controversy shall notify the other party, in writing, within twenty one (21) days of the claim, dispute, difference or controversy.

(b) If an employee raises such a claim, the employee, or his/her Shop Chair, or both, shall meet with the employee's immediate supervisor in an attempt to resolve the difference.   Such meeting shall take place within five (5) days of the receipt of notice of the claim.

(c) If the difference is not resolved pursuant to paragraph (b), a Union representative shall meet with the Club manager within five (5) days after the preceding meeting.

(d) If the Union representative and Club manager are unable to resolve the problem, within five (5) days after their meeting in paragraph (c), a designated Union representative shall meet with a designated representative of the Federation.

(e) Where either party fails to comply with the aforementioned time requirements for notice and meetings, the grievance will be deemed resolved and it shall not be subject to arbitration.

(f) If a satisfactory adjustment cannot be reached, the matter shall be submitted to arbitration by Alan Viani or Ronald Betso.  The decision and/or award of the arbitrator shall be final and binding.

Section 27.2    If a controversy relating to discharge or eviction or both cannot be satisfactorily adjusted between the Union and a Club, the same shall be promptly referred to arbitration in the manner hereinabove provided for excluding only the meeting required in Section 27.1, paragraph (b) above, and in the event that such arbitration shall result in a decision that such employee was unjustly discharged, laid-off or suspended and/or evicted and directing his/her reinstatement, such reinstatement shall be with back pay, and the award shall include the value of his/her room and meals at the Club in the event that the employee had previously received such privileges in connection with his/her employment.

## ARTICLE 28 - INDIVIDUAL AGREEMENTS

Section 28.1    A Club shall not enter into any agreement with any of its employees without the consent of the Union. This Agreement shall supersede any and all prior agreements made between a Club and any of its employees.

## ARTICLE 29 - MOST FAVORED NATION

Section 29.1    The Union agrees that if it enters into any agreement with any golf or country club within its geographical jurisdiction whereby such golf or country club shall receive any benefit or aid not accorded to the Federation, the terms of such agreement which are more favorable to the Federation than those provided in this Agreement shall be deemed to be automatically incorporated into this Agreement, and this Agreement shall be deemed automatically to conform to those more favorable terms.

## ARTICLE 30 - NO STRIKE, NO LOCKOUT

Section 30.1    During the term of this Agreement or any extension thereof, neither the Union, its officers, agents, members or any employee will authorize, instigate, aid, condone, participate in or engage in any form or type of strike, sympathy strike, work stoppage, slowdown, boycott, picket line, unfair listing, refusal to cross any picket line or any other interruption, refusal, cessation or interference with a Club's work or any impeding of the work or activities of a Club or the Federation, regardless of whether there is a claim by the Union of breach of this Agreement or of state or federal law by a Club or the Federation. Any employee or group of employees who engage in any of the activities listed above, or who in any way violate the provisions of this Section may be discharged or otherwise disciplined.

Section 30.2    During the term of this Agreement, a Club will not lock-out the employees.

Section 30.3    It is further acknowledged that it is the intent of the parties that any violation of the terms and provisions of this Section by the Union, an employee, a group of employees, a Club or the Federation is subject to the jurisdiction of the courts and that either party may seek to enforce the terms of this Article by injunctive proceedings in the courts.

## ARTICLE 31 - MANAGEMENT RIGHTS

Section 31.1    Except to the extent expressly abridged by an express and specific provision of this Agreement, each Club reserves and retains all of its common law or other rights to manage the business as such rights existed prior to the execution of this or any other previous agreement with the Union or any other union. The rights of management which are not abridged by this Agreement, shall include, but are not limited to: a Club's right to determine the prices and terms of providing services, quality and type of meals, methods of operation, to drop or to add a particular service or operation; the right to determine and from time to time to redetermine the number, location, relocation and types of services or operations, and the methods, processes, materials, operations and services to be employed or furnished, to discontinue, lease or relocate services or operations in whole or in part, or to discontinue performance of services or operations by employees of a Club, to determine the number of hours per day or per week services or

operations shall be carried on, to select and to determine the number of employees required, to determine the classification of and number of employees in each classification (if any), to assign work to such employees in accordance with the requirements determined by management, to establish and change work schedules, or to layoff, terminate or otherwise relieve employees from duty, to make and enforce rules for the maintenance of discipline and safety, and to suspend, discharge, or otherwise discipline employees for any infraction of any rule of the Club or for any other just cause. The listing of specific rights in this Agreement is not intended to nor shall it restrict or waive any of the rights of management not listed herein, whether or not such rights have been exercised by a Club in the past.

## ARTICLE 32 - GENERAL CONSTRUCTION

Section 32.1    This Agreement constitutes the entire agreement between the parties and supersedes and replaces in all respects all prior agreements, undertakings and practices between the parties that are hereby terminated by mutual agreement. All obligations, responsibilities, or claims of either party to or against the other, or on the part of the employees arising out of or in any way connected with said prior agreements have been satisfied and discharged in full, and in consideration of the terms and conditions contained in this Agreement, the Union will not, on behalf of itself or the employees it represents, hereafter assert, seek to process or make any claims, demands or grievances arising out of or in any way connected with said prior agreements.

Section 32.2    This Agreement is subject to amendment, alteration, or addition only by a subsequent written agreement between and executed by the Federation and the Union.

Section 32.3    Notwithstanding the foregoing, it is understood that no present employee shall receive a lower rate of pay than said employee is receiving on the effective date of this Agreement.

## ARTICLE 33 - SALE OR TRANSFER

Section 33.1    In the event a Club sells or transfers title to any of its premises so owned, maintained, managed and/or operated as aforesaid, to any individual, partnership and/or corporation, in which it or its members are directly or indirectly associated, which individual, partnership and/or corporation intends to conduct or is actually engaged in conducting a similar or comparable enterprise, the Club shall not be relieved of any responsibility under the terms and conditions of this Agreement until the expiration hereof.

Section 33.2    The same prohibition and/or conditions shall apply in the event of a merger or consolidation with any other Club or enterprise engaged in or conducting similar or comparable activities.

Section 33.3    A Club shall notify any purchaser of all terms, conditions, provisions and covenants of this Agreement and in the event of failure to do so, shall be obligated to the Union and the employees for any damage or loss sustained by reason of the failure to do so.

Section 33.4     If the new owner was so notified, and the purchaser assumes this Agreement, upon the date of transfer the seller shall be relieved of all responsibility under this Agreement except as to accumulated benefits up to the date of such sale or transfer.

## ARTICLE 34 - SENIORITY

Section 34.1     Each Club recognizes and will practice the principle of seniority by classification which is the relative status of employees based on their length of service with the Club from date of hire.

Section 34.2     Seniority shall govern with respect to layoffs, (as set forth in Article 6) recall from layoff and scheduling of vacations.  A Club may also take into account the ability of the employee to perform the work required.  Where ability is equivalent seniority shall govern.

Section 34.3     An employee shall lose seniority if the employee:

1.     quits;

2.     is discharged for cause;

3.     has been notified to report after a layoff and fails to report to work in five (5) days or give a satisfactory explanation for failure to report;

4.     a period of thirty-one (31) weeks has elapsed since layoff and the employee is not recalled.

Section 34.4     (a)     If overtime work is required at the end of an eight-hour shift, the overtime will first be offered to the most senior employee who is qualified to do the work and has experience doing the work involved, on a rotation basis or such other system as is in effect at the Club as at the effective date of this Agreement.  Under a rotation system, employees who do not accept an offer of overtime shall be placed at the bottom of the seniority list for purposes of being offered overtime.

(b)     In the event that an employee with seniority was not offered available overtime on the grounds that he was not qualified and it is later determined that he was qualified to do the overtime work offered, then his exclusive remedy shall be to be offered the next available overtime of the same type or other type for which he is also qualified.

Section 34.5     An employee who is unable to perform his/her job because of his/her own serious health condition shall retain seniority for up to 12 weeks.  The Club shall continue to make contributions to the Welfare Fund on behalf of such employee while on leave for his/her serious health condition up to a maximum of 16 weeks in a 12 month period provided the employee has worked 1250 hours in the last twelve (12) months before the leave and the Club was making contributions to the Welfare Fund on the employee's behalf immediately before taking his leave of absence.  For the purpose of this Section 34.5 only, the definition of

"serious health condition" shall be the same definition provided by the federal Family and Medical Leave Act.

## ARTICLE 35 - JURY DUTY

Section 35.1   Any full-time Employee who is called to Jury Duty during December, January and February and who is then currently working and on a Club's payroll at that time shall receive the difference between their regular wages and their Jury Duty pay for the days they are required to serve Jury Duty for a period not to exceed two (2) weeks, and shall not be required to work on said days.

## ARTICLE 36 - ELECTRONIC EQUIPMENT

Section 36.1 Employees shall refrain from using cellphones or other electronic equipment while they are working at the club or in areas of the club to which members or guests have access except that cellphones may be used in cases of emergency.

## ARTICLE 37 - SUCCESSORS AND ASSIGNS

Section 37.1 This Agreement shall be binding upon each and all of the agents, representatives, successors and assigns of the parties hereto.

## ARTICLE 38 - TERMINATION

Section 38.1 This Agreement shall go into effect as of the 1st day of February, 2005 and shall continue in effect up to and including January 31, 2008.

Section 38.2 In the event neither party gives notice to the other thirty (30) days prior to the termination date of this Agreement of its desire to modify the provisions hereof, this Agreement shall be continued in full force and effect for a period of one (1) year from said termination date.

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

FEDERATION OF COUNTRY CLUBS          LOCAL 32BJ, SEIU

By: _____          By: _____
        James Rice, President                  Sec. Treasurer.

APPENDIX

FEDERATION OF COUNTRY CLUBS MEMBERS

The Apawamis Club
Ardsley Country Club
Bonnie Briar Country Club
Brae Burn Country Club, Inc.
Canyon Club, Inc.
Century Country Club
Elmwood Country Club, Inc.
Fairview Country Club
Fenway Golf Club, Inc.
Hampshire Country Club
Knollwood Country Club
The Larchmont Yacht Club
Leewood Golf Club, Inc.
Old Oaks Country Club, Inc.
Pelham Country Club
Quaker Ridge Golf Club, Inc.
Ridgewood Country Club, Inc.
Scarsdale Golf Club, Inc.
Siwanoy Country Club
The Saint Andrews Golf Club
Sunningdale Country Club
Tamarack Country Club
Westchester Hills Golf Club
Whipporwill Club
Willow Ridge Country Club, Inc.
Winged Foot Golf Club

EXHIBIT 11

Tracey A. Cullen

From:    Peter M. Panken
Sent:    Thursday, June 05, 2008 5:49 PM
To:      David Wims
Subject: RE: Wright v. Brae Burn Country Club, Inc.

We will not consent to the addition of a thirteenth amendment cause of action, and indeed would consider it a frivolous and sanctionable act on your part in view of the cases which hold that persons who can leave their employment are not covered by the thirteenth amendment. See US v, Shackney, 333 F.2d 475 and Brown v NYC Department of Correction, 1976 US Dist Lexis 14395

I sincerely hope that you will cease your harassing tactics and inappropriate offers so that we will not have to bring your actions to the attention of the tribunal.

Peter M. Panken, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4840 (Direct)
(212) 878-8630 (Fax)
ppanken@ebglaw.com

---

**From:** David Wims [mailto:davidwims@hotmail.com]
**Sent:** Thursday, June 05, 2008 2:48 PM
**To:** Peter M. Panken
**Cc:** Tracey A. Cullen
**Subject:** RE: Wright v. Brae Burn Country Club, Inc.
**Importance:** High

Mr. Panken,

Please advise if you will consent to my filing a Second Amended Complaint adding: 1) Mr. Velez as a party plaintiff named in the caption; and 2) claims on behalf of both of my clients for violation of the Thirteenth Amendment to the U.S. Constitution for the "off the clock" work.  Thanks.

Law Office of David Wims
David C. Wims, Esq.
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550
Fax (646) 393-9552
davidwims@hotmail.com

---

Subject: RE: Wright v. Brae Burn Country Club, Inc.
Date: Tue, 3 Jun 2008 14:58:47 -0400
From: PPanken@ebglaw.com
To: davidwims@hotmail.com

I must see what amendment you ae proposing before answering.

Peter M. Panken, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York  10177
(212) 351-4840 (Direct)
(212) 878-8630 (Fax)
ppanken@ebglaw.com

---

**From:** David Wims [mailto:davidwims@hotmail.com]
**Sent:** Tuesday, June 03, 2008 2:19 PM
**To:** Peter M. Panken
**Subject:** RE: Wright v. Brae Burn Country Club, Inc.

Mr. Panken,

1. Will you consent to me amending the complaint?

2. Of course, the third item in my previous email is at your client's option.

Law Office of David Wims
David C. Wims, Esq.
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550
Fax (646) 393-9552
davidwims@hotmail.com

---

Subject: RE: Wright v. Brae Burn Country Club, Inc.
Date: Tue, 3 Jun 2008 13:42:51 -0400
From: PPanken@ebglaw.com
To: davidwims@hotmail.com

If you have a reasonable offer. I will consider it, but the amount you offer  is not
acceptable.

Peter M. Panken, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York  10177
(212) 351-4840 (Direct)
(212) 878-8630 (Fax)
ppanken@ebglaw.com

**From:** David Wims [mailto:davidwims@hotmail.com]
**Sent:** Tuesday, June 03, 2008 1:08 PM
**To:** Peter M. Panken
**Subject:** RE: Wright v. Brae Burn Country Club, Inc.

Your client is in gross noncompliance with its recordkeeping obligations under both federal and state law. It is required to record the start and end times of work for its employees. Many of these cards have days that do not have an end time. Please advise. Thanks.

Law Office of David Wims
David C. Wims, Esq.
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550
Fax (646) 393-9552
davidwims@hotmail.com

Subject: RE: Wright v. Brae Burn Country Club, Inc.
Date: Mon, 2 Jun 2008 16:07:46 -0400
From: PPanken@ebglaw.com
To: davidwims@hotmail.com

Are you refusing to detail the hours allegedly worked off the clock?

Peter M. Panken, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4840 (Direct)
(212) 878-8630 (Fax)
ppanken@ebglaw.com

**From:** David Wims [mailto:davidwims@hotmail.com]
**Sent:** Monday, June 02, 2008 4:05 PM
**To:** Peter M. Panken
**Subject:** RE: Wright v. Brae Burn Country Club, Inc.

Mr. Panken,

As I'm sure you know, both "off the clock" and "regular rate" claims are cognizable under the FLSA. Further, FLSA claims may not be waived by a union in the collective bargaining context (they are waivable by way of individual arbitration clauses).

Additionally, the SD, in Moon, included meals in its calculation of the "regular rate" under both federal and state law. Thanks.

Law Office of David Wims

David C. Wims, Esq.
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550
Fax (646) 393-9552
davidwims@hotmail.com

Subject: RE: Wright v. Brae Burn Country Club, Inc.
Date: Mon, 2 Jun 2008 15:30:04 -0400
From: PPanken@ebglaw.com
To: davidwims@hotmail.com

In view of the fact that there is no liability under New York
State Law with respect to overtime rates and that there are
no potential parties that can be added in view of the US
Wage Hour decision on the issue, I am at a loss to
understand how you calculate the $5,000 no less the
$10,000 legal fees.

Please forward to me the details of any theory you may be
espousing so I can understand your clients claims.

Peter M. Panken, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4840 (Direct)
(212) 878-8630 (Fax)
ppanken@ebglaw.com

**From:** David Wims [mailto:davidwims@hotmail.com]
**Sent:** Monday, June 02, 2008 3:22 PM
**To:** Peter M. Panken
**Subject:** RE: Wright v. Brae Burn Country Club, Inc.

Mr. Panken,

I can do $5,000 apiece, and $10,000 in attorney's fees.
Thanks.

Law Office of David Wims
David C. Wims, Esq.
1430 Pitkin Ave., 2nd Floor
Brooklyn, NY 11233
(646) 393-9550
Fax (646) 393-9552
davidwims@hotmail.com

> Subject: Wright v. Brae Burn Country Club, Inc.

7/29/2008

> Date: Mon, 2 Jun 2008 12:13:32 -0400
> From: PPanken@ebglaw.com
> To: davidwims@hotmail.com
> CC: PPanken@ebglaw.com
>
> Mr. Wims:
>
> Attached please find a letter from Peter M. Panken, Esq.
in connection
> with the above referenced matter. Hard copy will follow
by regular
> mail.
>
> Pauline Assael
> Assistant to Peter M. Panken, Esq.
> Epstein Becker & Green, P.C.
> 250 Park Avenue
> New York, New York 10177
> (212) 351-3719 (Direct)
> (212) 661-0989 (Fax)
> (212) 351-4500 (Main)
> passael@ebglaw.com
> www.ebglaw.com
> ----------------------------------------------------------
>
> Confidentiality Note: This e-mail is intended only for the
person or entity to which it is addressed and may contain
information that is privileged, confidential or otherwise
protected from disclosure. Dissemination, distribution or
copying of this e-mail or the information herein by anyone
other than the intended recipient, or an employee or agent
responsible for delivering the message to the intended
recipient, is prohibited. If you have received this e-mail in
error, please call the Help Desk of Epstein Becker & Green
at 212-351-4701 and destroy the original message and all
copies.
>
> To ensure compliance with requirements imposed by the
IRS, we inform you that any U.S. federal tax advice
contained in this communication (including any
attachments) is not intended or written to be used, and
cannot be used, for the purpose of (i) avoiding penalties
under the Internal Revenue Code or (ii) promoting,
marketing or recommending to another party any
transaction or matter addressed herein.
>
> Pursuant to the CAN-SPAM Act this communication may
be considered an advertisement or solicitation. If you
would prefer not to receive future marketing and
promotional mailings, please submit your request via email
to ebgus@ebglaw.com or via postal mail to Epstein Becker
& Green, Attn: Marketing Department, 250 Park Avenue,
New York, NY 10177. Be sure to include your email address
if submitting your request via postal mail. -EBG1
> ----------------------------------------------------------

Change the world with e-mail. Join the i'm Initiative from Microsoft.

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call the Help Desk of Epstein Becker & Green at 212-351-4701 and destroy the original message and all copies.

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to ebgus@ebglaw.com or via postal mail to Epstein Becker & Green, Attn: Marketing Department, 250 Park Avenue, New York, NY 10177. Be sure to include your email address if submitting your request via postal mail. -EBG1

Keep your kids safer online with Windows Live Family Safety. Help protect your kids.

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call the Help Desk of Epstein Becker & Green at 212-351-4701 and destroy the original message and all copies.

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to ebgus@ebglaw.com or via postal mail to Epstein Becker & Green, Attn: Marketing Department, 250 Park Avenue, New York, NY 10177. Be sure to include your email address if submitting your request via postal mail. -EBG1

Enjoy 5 GB of free, password-protected online storage. Get Windows Live SkyDrive.

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call the Help Desk of Epstein Becker & Green at 212-351-4701 and destroy the original message and all copies.

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or

recommending to another party any transaction or matter addressed herein.

Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to ebgus@ebglaw.com or via postal mail to Epstein Becker & Green, Attn: Marketing Department, 250 Park Avenue, New York, NY 10177. Be sure to include your email address if submitting your request via postal mail. - EBG1

It's easy to add contacts from Facebook and other social sites through Windows Live™ Messenger. Learn How.

Confidentiality Note: This e-mail is intended only for the person or entity to which it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure. Dissemination, distribution or copying of this e-mail or the information herein by anyone other than the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, is prohibited. If you have received this e-mail in error, please call the Help Desk of Epstein Becker & Green at 212-351-4701 and destroy the original message and all copies.

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Pursuant to the CAN-SPAM Act this communication may be considered an advertisement or solicitation. If you would prefer not to receive future marketing and promotional mailings, please submit your request via email to ebgus@ebglaw.com or via postal mail to Epstein Becker & Green, Attn: Marketing Department, 250 Park Avenue, New York, NY 10177. Be sure to include your email address if submitting your request via postal mail. -EBG1

Search that pays you back! Introducing Live Search cashback. Search Now!