UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/20/09
```

DEMETRIUS WRIGHT and LUIS VELEZ,      :
on behalf of themselves and
all others similarly situated,       :

               Plaintiffs,      :

      - against -                    :          **MEMORANDUM DECISION**

BRAE BURN COUNTRY CLUB,               :          08 Civ. 3172 (DC)
INC. et al.,
                      :

               Defendants.
                      :
- - - - - - - - - - - - - - - - - - -x

**APPEARANCES:**    LAW OFFICES OF DAVID WIMS
              By:  David Wims, Esq.
          1431 Pitkin Avenue, 2d Floor
          Brooklyn, New York  11233
          Attorneys for Plaintiffs

          EPSTEIN BECKER & GREEN, P.C.
              By:  Tracey A. Cullen, Esq.
                   Peter M. Panken, Esq.
          250 Park Avenue
          New York, New York  10177-1211
          Attorneys for Defendants

**CHIN, District Judge**

        Plaintiffs Demetrius Wright and Luis Velez bring this
action against their former employer Brae Burn Country Club, Inc.
(the "Club"), the Club's general manager Steven Vando, and the
Club's controller Maria Conte.  Plaintiffs allege defendants
failed to pay them wages, including compensation for overtime, in
violation of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C.
§ 201 et seq., and the New York Labor Law (the "NYLL"), § 190 et
seq.  They also allege violations of the Thirteenth Amendment and
the Racketeer Influenced and Corrupt Organizations Act ("RICO"),
18 U.S.C. § 1961 et seq.

Defendants move to dismiss the complaint or in the alternative for summary judgment.  They also move for sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. Because both sides submit evidence outside the complaint for the Court's consideration, I treat defendants' motion as one for summary judgment.  For the reasons that follow, the motion for summary judgment is granted in part and denied in part, and the motion for sanctions is denied.

**BACKGROUND**

## A.    The Facts

The facts are drawn from the complaint and from the affidavits and exhibits submitted by the parties.  Where the facts are disputed, all inferences are drawn in favor of plaintiffs as the non-moving party.

### 1.    The Parties

The Club is located in Purchase, New York.  (Second Am. Compl. ¶¶ 11, 12).

Wright and Velez are former employees of the Club. Wright was employed as a laundry attendant from April 2006 to April 2007.  (Id. ¶ 14).  Velez was employed as a maintenance worker from April 2006 to December 2006.  (Id. ¶ 15).  Both were covered by a collective bargaining agreement (the "CBA") between Local 32BJ SEIU and the Federation of Country Clubs.  (Panken Decl. Ex. 10).  Plaintiffs never filed grievances under the grievance and arbitration provision of the CBA raising the claims they assert in this lawsuit.  (Defs. 56.1 ¶ 7; Pls. 56.1 ¶ 7).

### 2. **Wages and Hours**

Plaintiffs were scheduled to work five twelve-hour shifts per week, with additional hours and days assigned as needed. (Second Am. Compl. ¶ 23). Wright was paid $9.00 an hour until March 2007, when his hourly rate was increased to $9.40. (Wright Aff. ¶ 3). Velez was paid $9.00 an hour. (Velez Aff. ¶ 3). Plaintiffs frequently worked more than forty hours per week and performed work that was not recorded on their time cards or otherwise accounted for by the Club. (Second Am. Compl. ¶ 24). Club management "edited" plaintiffs' time cards to make it appear as though plaintiffs worked fewer hours. (Second Am. Compl. ¶¶ 25-26; Wright Aff. Ex. 1; Velez Aff. Ex. 1).

### 3. **Meals and Lodging**

Meals were often provided to plaintiffs by the Club and "sometimes consisted of surplus food that was for Brae Burn's members that had been served on that date and time." (Wright Aff. ¶ 11; accord Velez Aff. ¶ 11). Wright was also provided with lodging by the Club. (Wright Aff. ¶ 10).

### 4. **U.S. Department of Labor Audit**

At some point during or after plaintiffs' employment with the Club, the United States Department of Labor (the "DOL") conducted a wage and hour audit of the Club and determined that additional compensation was due employees. (Vando Aff. ¶ 21). Wright was found to have been entitled to an additional $119.10, and a check for that amount, minus applicable taxes, was sent to

Wright in May 2008.  (<u>Id.</u> Ex. G).  Plaintiffs do not dispute that Wright received a check from the Club in May 2008.

### 5.   <u>Wright's Prior Employment Claim</u>

Wright previously filed an employment discrimination charge against the Club with the United States Equal Employment Opportunity Commission (the "EEOC").  The claim was settled in December 2007, apparently without the approval or supervision of the EEOC or any court.  (<u>See</u> Vando Aff. ¶ 18).  As part of the confidential settlement agreement, the Club paid Wright a certain monetary amount and Wright signed a General Release in which he agreed to:

> release[] and forever discharge[] [the Club,
> its agents, employees, and managers] . . .
> both individually and in their official
> capacities . . . from any and all claims,
> causes of action, suits, back-wages,
> benefits, attorneys' fees, . . . debts,
> dues, sums of money . . . controversies,
> agreements, promises, . . . claims, charges,
> complaints and demands whatsoever, in law, or
> equity, of any and every kind, nature and
> character, known or unknown . . . including,
> but not limited to, [claims] arising under
> any federal, state or local, human or civil
> rights, wage-hour, or labor laws . . . .

(Panken Decl. Ex. 1 at 1-2).

Wright further agreed that "he has been paid in full for all past services including unused vacation" through the end of his employment with the Club.  (<u>Id.</u> at 3).  Wright was represented by his current counsel David Wims in the prior dispute; the settlement payment was made payable to "Demetrius Wright and David Wims, Esq., as attorney."  (<u>Id.</u> at 2).

## B.    Prior Proceedings

Wright filed the complaint in this action against the Club on March 31, 2008, seeking unpaid overtime and liquidated damages under the FLSA and NYLL, as well as damages for breach of contract for the failure to pay overtime.  Wright brought his FLSA claim as a collective action under 29 U.S.C. § 216(b) on behalf of all other similarly situated employees at the Club electing to opt-in to the action.  On May 23, 2008, I denied the Club's motion to dismiss without prejudice to renewal.  Wright filed an amended complaint on May 27, 2008, adding claims for unpaid wages for hours worked.

On July 15, 2008, a second amended complaint was filed with Velez named as a second plaintiff and Vando and Conte named as additional defendants.  Plaintiffs also asserted new claims under the Thirteenth Amendment and RICO.  These motions followed shortly thereafter.

## DISCUSSION

## A.    Motion for Summary Judgment

As discussed above, defendants have moved to dismiss or in the alternative for summary judgment.  As defendants present materials outside the complaint in support of their motion, I treat it as one for summary judgment.  See Fed. R. Civ. P. 12(b), 56; Chambers v. Time Warner, Inc., 282 F.3d 147, 154-55 (2d Cir. 2002).  Plaintiffs were provided with notice and the opportunity to submit supporting material, and they did so, presenting materials outside the complaint with their opposition papers.

Accordingly, I review defendants' motion according to the summary
judgment standard.

### 1.   **Standard for Summary Judgment**

Summary judgment will be granted when "there is no
genuine issue as to any material fact and . . . the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475
U.S. 574, 585-87 (1986). Accordingly, the Court's task is not to
"weigh the evidence and determine the truth of the matter but to
determine whether there is a genuine issue for trial." Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Summary
judgment is inappropriate if, resolving all ambiguities and
drawing all inferences against the moving party, there exists a
dispute about a material fact "such that a reasonable jury could
return a verdict for the nonmoving party." Id. at 248; see Bay
v. Times Mirror Magazines, Inc., 936 F.2d 112, 116 (2d Cir.
1991).

To defeat a motion for summary judgment, the nonmoving
party "must do more than simply show that there is some
metaphysical doubt as to the material facts." Matsushita, 475
U.S. at 586. The nonmoving party "must present concrete
particulars and cannot succeed with purely conclusory
allegations." Fitch v. R.J. Reynolds Tobacco Co., 675 F. Supp.
133, 136 (S.D.N.Y. 1987) (citation omitted). There is no issue
for trial unless there exists sufficient evidence in the record
favoring the party opposing summary judgment to support a jury

verdict in that party's favor.  <u>Anderson</u>, 477 U.S. at 249-50.  As
the Court held in <u>Anderson</u>, "[i]f the evidence is merely
colorable, or is not significantly probative, summary judgment
may be granted."  <u>Id.</u> (citations omitted).

    2.   **Wage and Hour Claims**

        Drawing all inferences in favor of plaintiffs as the
non-moving party, I conclude that a genuine issue of material
fact exists as to plaintiffs' unpaid wages and overtime claims
under the FLSA.  Plaintiffs submit evidence sufficient to raise
questions of fact about the number of hours they worked at the
Club.  Additionally, defendants' assertions as to why plaintiffs'
wage and hour claims are barred as a matter of law are, for the
most part, unavailing, at least at this stage of the litigation.

        Plaintiffs contend they worked a number of hours for
which they were not paid.  In support of this contention, they
submit affidavits and copies of some of their pay stubs and time
cards.  These are sufficient to raise a question of fact.  For
example, Velez's pay stub for the period ending September 10,
2006 indicates he was paid for 54.5 hours of work -- 40 hours at
his regular rate and 14.5 hours at his overtime rate.  (Velez
Aff. Ex. 1).  Velez's time card for that period, however,
indicates that he worked more than 63 hours that week.  (<u>Id.</u>).
Wright also submitted pay stubs and time cards, but he does not
appear to have regularly punched-out from work at the Club, so
his total number of work hours are unclear.  (Wright Aff. Ex. 1).

While defendants assert plaintiffs were paid for all
hours worked, they also make other assertions that actually
create additional fact issues.  First, they state that "when
[plaintiffs] punched in once and punched out only after work, it
was necessary to deduct . . . non-working time" from their time
cards, referring to plaintiffs' unpaid meal periods and rest
periods.  (Defs. Reply at 8).  Defendants therefore acknowledge a
discrepancy between plaintiffs' time cards and their pay stubs.
Second, although defendants provide plausible reasons for the
discrepancy (accounting for plaintiffs' unpaid meal and rest
periods), plaintiffs assert, under oath, that they sometimes
worked through their meal and rest breaks.  (Wright Aff. ¶ 12;
Velez Aff. ¶ 12).  Accordingly, the number of hours worked by
plaintiffs is a factual question that must be resolved by a fact
finder.  Third, defendants' argument that the DOL's audit of the
Club and the payment of wages that followed rendered plaintiffs'
FLSA claims moot is also unpersuasive at this juncture, as
defendants have not provided details as to what time period or
wages the DOL audit covered.

In addition to disputing the number of hours worked by
plaintiffs, defendants raise a number of other arguments as to
why plaintiffs' wage and hour claims must be dismissed as a
matter of law.  First, defendants claim Wright waived his FLSA
and NYLL claims by executing the General Release signed in the
settlement of his prior claim against the Club.  (Defs. Mem. at
9-11).  While Wright agreed that he had been "paid in full" by

- 8 -

the Club in the Release and agreed to waive any "wage hour" claims he might have against defendants (Panken Decl. Ex. 1), courts have held that individuals' rights under the FLSA are non-waivable, except in certain circumstances.  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706-07 (1945); Simel v. JP Morgan Chase, No. 05 Civ. 9750 (GBD), 2007 WL 809689, at *4 (S.D.N.Y. March 19, 2007); Le v. SITA Information Networking Computing USA, Inc., No. 07 Civ. 86 (JS)(MLO), 2008 WL 724155, at *1 (E.D.N.Y. March 13, 2008).  The exceptions include situations where the waiver or release of FLSA rights is given as part of a settlement supervised by a court or the Secretary of Labor.  Simel, 2007 WL 809689, at *4.  Here, although Wright signed the General Release in settlement of his prior claim against the Club, the Release was not executed as part of a court or DOL-supervised settlement. Accordingly, Wright cannot be deemed to have waived his rights under the FLSA.

          Acknowledging the non-waivability of FLSA claims, defendants argue that even if Wright's FLSA claims were not waived, his claims under the NYLL were waived by his signing of the General Release.  (Defs. Reply at 3-4).  I agree.  The New York State Court of Appeals has held that "where there is no express indication of legislative intent, waiver or modification of such a statutory benefit will be permissible to the extent that it can be ascertained that the legislative purpose is not contravened."  Am. Broadcasting Cos., Inc. v. Roberts, 61 N.Y.2d 244, 249 (1984).  There is no express restriction on the private

- 9 -

settlement or waiver of wage and hour claims under New York law.
Cf. N.Y. Lab. Law § 595 (McKinney 2002) (restricting waiver of
rights to unemployment insurance); N.Y. Workers' Comp. Law § 32
(McKinney 2005) (restricting waiver of rights to workers'
compensation); see also Simel, 2007 WL 809689, at *4-5
(discussing New York law on waiver of claims and holding NYLL
wage claims waived).  Wright's waiver of his NYLL wage claims,
moreover, does not raise any public policy concerns or run
counter to legislative purpose.  The purpose of Article 6 of the
NYLL, covering § 190 et seq., is "to strengthen and clarify the
rights of employees to the payment of wages."  Angello v. Labor
Ready, Inc., 7 N.Y.3d 579, 583-84 (2006) (citation omitted).
Holding Wright's NYLL claims waived does not implicate these
concerns.  At the time Wright signed the General Release, he was
no longer working for the Club and had not worked there for
approximately eight months.  This is not the case of an
individual contracting away his basic labor and employment rights
to his own detriment and the detriment of others.  Rather,
Wright's waiver of his claims was given in exchange for
settlement of a dispute between himself and the Club regarding
his employment.  He was represented by counsel in the settlement
negotiations, and the language of the General Release was clear.
Accordingly, Wright waived his wage and hour claims under the
NYLL, although his FLSA claims remain.

        Second, defendants claim plaintiffs' wage and hour
claims should be dismissed because they were required to first

submit them to arbitration according to the CBA.  This argument

is without merit.  Courts have long held that individuals may

seek to enforce their statutory wage and hour rights in court,

even when their union-negotiated CBA contains an arbitration

provision.  See Barrantine v. Arkansas-Best Freight Sys., Inc.,

450 U.S. 728, 738-39 (1981); Tran v. Tran, 54 F.3d 115, 118 (2d

Cir. 1995)(plaintiff not required to exhaust arbitration remedies

before filing wage and hour claims in court).  While some courts

have found that an explicit waiver of judicial remedies for wage

claims may be valid, see Scott v. City of New York, No. 02 Civ.

9530 (SAS), 2008 WL 4104020, at *5 (S.D.N.Y. Aug. 28, 2008), such

is not the case here.  The CBA contains only a general grievance

and arbitration provision that does not specify how members' wage

claims must be resolved.  (Panken Decl. Ex. 5 at 14).

Accordingly, plaintiffs' wage claims are not barred by the CBA's

arbitration provision.

            Third, defendants argue Velez did not properly opt-in

to the action and therefore may not prosecute his FLSA claims

with Wright.  The FLSA creates a mechanism for collective actions

by multiple employees subjected to the same unlawful practices or

policies.  The statute describes how employees opt-in to the

actions:

> An action . . . may be maintained against any
> employer . . . by any one or more employees
> for and in behalf of himself or themselves
> and other employees similarly situated.  No
> employee shall be a party plaintiff to any
> [FLSA enforcement action] unless he gives his
> consent in writing to become such a party and

- 11 -

> such consent is filed in the court in which
> such action is brought.

29 U.S.C. § 216(b)

Defendants' efforts to dismiss Velez's FLSA claims for
failure to properly opt-in to the collective action are
unavailing. Plaintiffs' Second Amended Complaint pled specific
facts as to Velez's employment with the Club; it did not simply
rely on allegations of an unlawful practice or policy by the Club
that affected Velez. In other words, Velez appears as a
plaintiff with his own individual FLSA claims, not merely as an
employee similarly situated to Wright. Moreover, Velez
individually signed his affidavit submitted in support of
plaintiffs' opposition to defendants' motion. This is sufficient
to be considered "consent in writing" filed with the Court. See
Barrantine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 736
n.11 (1981) (requirement satisfied when petitioner individually
signed two sets of interrogatories). Accordingly, defendants'
motion to dismiss Velez's FLSA claims is denied. Both Wright and
Velez may proceed on their wage and hour claims under the FLSA,
and Velez may also proceed on his claims under the NYLL.

## 3. **Thirteenth Amendment and RICO Claims**

Plaintiffs' claims under the Thirteenth Amendment and
RICO are dismissed in the Court's discretion as having been
abandoned. In their opposition papers, plaintiffs fail to
address defendants' arguments regarding their Thirteenth
Amendment and RICO claims. When one party fails to respond to an

opposing party's arguments that its claim must be dismissed, the
claim may be deemed abandoned.  See Brodsky v. Trumbull Bd. of
Educ., No. 06 Civ. 1947 (PCD), 2009 WL 230708, at *9 (D. Conn.
Jan. 30, 2009); Santiago v. Newburgh Enlarged City School Dist.,
485 F. Supp. 2d 327, 338 (S.D.N.Y. 2007); Lipton v. County of
Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004); Jessamy v. City
of New Rochelle, 292 F. Supp. 2d 498, 515, n.21 (S.D.N.Y. 2003);
Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y.
2003).  Here, plaintiffs added their Thirteenth Amendment and
RICO claims for the first time in their Second Amended Complaint,
yet they wholly ignored defendants' arguments about these claims
in their brief in opposition to defendants' motion.  Instead,
plaintiffs' counsel submitted a declaration stating "defendants'
motion should be denied in its entirety."  (Wims Decl. ¶ 8).
This broad statement cannot be construed as a response to
defendants' lengthy and substantive arguments regarding
plaintiffs' Thirteenth Amendment and RICO claims.  (See Defs.
Mem. at 13-22).  Accordingly, plaintiffs' Thirteenth Amendment
and RICO claims are deemed abandoned and dismissed.

## B.  **Motion for Sanctions**

Defendants move for sanctions under Rule 11 of the
Federal Rules of Civil Procedure and 28 U.S.C. § 1927.  Their
motion is denied.

Defendants' assertion that David Wims, plaintiffs'
counsel, conducted himself in an unreasonable and vexatious
manner has some support.  First, Wims has asserted, on

plaintiffs' behalf, two clearly meritless claims.  The Thirteenth
Amendment claim clearly lacks merit, as plaintiffs have not
provided any evidence of compulsion or coercion as required for a
claim of involuntary servitude.  See United States v. Kozminski,
487 U.S. 931, 952 (1988) (defining involuntary servitude as "a
condition of servitude in which the victim is forced to work for
a defendant by use or threat of physical restraint or injury or
by use of coercion through law or legal process").  Similarly,
plaintiffs' RICO claim is without any basis, as this is an
employment case, not a racketeering case, and plaintiffs have not
sufficiently alleged a pattern of racketeering activity or the
other elements of a RICO claim.  Indeed, after defendants moved
to dismiss or for summary judgment, plaintiffs did not even try
to address these two prongs of defendants' motion.

Moreover, Wims used inappropriate and unseemly language
in his communications with defense counsel.  For example, in a
May 27, 2008 email to defense counsel, Wims wrote: "Can I get an
offer with lunch valued at $8 and dinner at $12?  Otherwise, my
client will testify that he consumed steaks, chicken breasts and
caviar.  Also, let me get the lodging valued at $25/day.
Thanks."  (Panken Decl. Ex. 5).  In another exchange on June 3,
2008, defense counsel wrote to Wims, "If you have a reasonable
[demand]. I will consider it, but the amount you offer is not
acceptable."  Wims responded by stating, "$5,000 apiece + $10,000
in attorney's fees + $15,000 to leave your client alone (and not
sue it again).  Thanks."  (Id. Ex. 7).  The tone and substance of
these comments simply is not appropriate.

Nonetheless, I cannot say that Wims's conduct meets the stringent requirements set forth in the case law for the imposition of sanctions. See, e.g., Storey v. Cello Holdings, L.L.C., 347 F.3d 370 (2d Cir. 2003) (objective unreasonableness standard under Rule 11); Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78-82 (2d Cir. 2000) (sanctions not warranted by, inter alia, letter to plaintiff's former counsel in which plaintiff's counsel threatened to force former counsel to undergo legal equivalent of a "proctology exam" if former counsel did not release plaintiff's files); Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336-41 (2d Cir. 1999) (holding that while sanctions are warranted when claim is brought without colorable basis and in bad faith, "claim that fails as a matter of law is not necessarily lacking any basis at all"). Some of plaintiffs' claims are surviving this motion, and thus I am not persuaded, at this juncture, that this case has been brought in bad faith.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. Wright's claims under the NYLL are dismissed, as are both plaintiffs' claims under the Thirteenth Amendment and RICO. Both plaintiffs may proceed with their FLSA claims, and Velez may proceed with his claims under NYLL as well.

Defendants' motion for sanctions is denied, but Wims is hereby warned that further inappropriate conduct will not be

tolerated.   The parties shall appear for a pre-trial conference

on April 17, 2009, at 10:30 a.m.

          SO ORDERED.

Dated:     New York, New York
           March 20, 2009

                                        _____
                                        DENNY CHIN
                                        United States District Judge